## STATE OF CONNECTICUT *v.* DANTE NARDINI

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and COVELLO, Js.

Argued March 31—decision released July 13, 1982

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Richard Emanuel* and *Joette Katz,* assistant public defenders, for the appellant (defendant).

*Mary M. Galvin,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Linda K. Lager,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was found guilty by a jury of conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-111 (a) and 53a-48 and also of the crime of arson in the first degree in violation of General Statutes § 53a-111 (a). He was found not guilty on a third count charging larceny in the second degree. In his appeal from the judgment on the two counts of which he was convicted the defendant has raised five claims of error: (1) that he was denied his statutory right to have counsel present before the judge who conducted an investigation pursuant to General Statutes § 54-47 which preceded the institution of the criminal charges upon which he was tried; (2) that the admission of so much evidence of other misconduct on his part, both prior and subsequent to the offenses charged, deprived him of due process of law; (3) that the use of two prior felony convictions for the purpose of impeaching him was improper because of their irrelevance to credibility and their remoteness in time; (4) that the court charged that the defendant

could be found guilty of arson without actually having the requisite intent; and (5) that a reference in the charge to one of the state's witnesses as an accomplice was erroneous. We find no error.

## I

On October 16, 1975, more than a year before the institution of the present criminal proceeding against him, the defendant was summoned before a judge appointed as a so-called "one-man grand jury" pursuant to General Statutes § 54-47 to investigate several suspicious fires in New Haven, including a fire which destroyed a garage at the rear of 778-780 George Street on November 14, 1974. A corporation owned by the defendant and his wife held title to this property. As an officer of the corporation the defendant was subpoenaed and directed to bring certain records of the corporation to the investigation. After these documents were submitted, the state's attorney stated that he intended to question the defendant. The defendant was informed by the judge of his right to have counsel with him during the inquiry as provided by § 54-47 (f) and also of his constitutional right against self-incrimination. The defendant said that he had a lawyer who was not available that day. The judge offered to postpone the defendant's interrogation until his lawyer could be with him. The defendant said he did not want to come back on some other day and lose additional time from his business. The state's attorney warned the defendant that he was a target of the investigation and that he was being given an opportunity to have counsel with him. The defendant said he understood, but when asked by the state's attorney whether he waived "those rights" the defendant replied that he was "not willing to waive any rights." The judge

then interjected that "[a]ll he is willing to waive is his right to have an attorney; that's all." The defendant repeated that he was not willing to waive any rights, but added "I want to get through with this thing now." The judge commented that the question of the state's attorney had been over-broad, that only the waiver of the right to counsel was being discussed, and that no other waivers would be permitted.

At the conclusion of this colloquy the state's attorney began to question the defendant. Some of this testimony was used at the trial of the present case for the purpose of impeaching the credibility of the defendant after he had taken the stand in his own defense. Although no objection was raised nor exception taken to such use of this testimony at the trial, as required to preserve a claim of error in the admission of evidence; Practice Book §§ 288, 3063; the defendant seeks review of this claimed violation of his right to counsel under the exception we have established for a deprivation of a fundamental constitutional right; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); and also under our discretionary power to notice "plain error." Practice Book § 3063.

We see no good reason in this case to exercise our authority to review the defendant's claim as "plain error." The situation is not distinguishable from many other cases where we have refused to consider issues first raised on appeal. See, e.g., *State* v. *Miller,* 186 Conn. 654, 672, 443 A.2d 906 (1982); *State* v. *Kurvin,* 186 Conn. 555, 564, 442 A.2d 1327 (1982); cf. *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982). We are not convinced that the inference drawn by the judge from what

transpired before him that the defendant wished to proceed without counsel rather than be required to return some other day was so unwarranted that we should "in the interest of justice" overlook the failure of the defendant to preserve this claim of error properly at trial.

We also conclude that the claimed error does not fall within the narrow *Evans* by-pass. See *State v. Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). First, we are not dealing with the constitutional right to counsel established by the sixth amendment to the federal constitution and article first, § 8 of the Connecticut constitution, but with a privilege created by statute. Where a grand jury proceeding is accusatory, a defendant is not entitled to the assistance of counsel. *State v. Cosgrove,* 186 Conn. 476, 479, 442 A.2d 1320 (1982). It has also been held that there is no such constitutional right before an investigative grand jury. *United States v. Mandujano,* 425 U.S. 564, 581, 96 S. Ct. 1768, 48 L. Ed. 2d 212 (1976); *In re Groban,* 352 U.S. 330, 333, 77 S. Ct. 510, 1 L. Ed. 2d 376 (1957); *In re Taylor,* 567 F.2d 1183, 1186n (2d Cir. 1977); *United States v. Capaldo,* 402 F.2d 821, 824 (2d Cir. 1968), cert. denied, 394 U.S. 989, 39 S. Ct. 1476, 22 L. Ed. 2d 764 (1969); *State v. Moynahan,* 164 Conn. 560, 564–67, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State v. Cobbs,* 164 Conn. 402, 412, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973).

Second, it appears that the only use made of the testimony of the defendant in the absence of his counsel at the investigative hearing was for the purpose of impeachment. Statements of a defendant which have been obtained after a failure to

comply with the requirements for an effective waiver of the right to counsel or the privilege against self-incrimination may be used in cross-examining him after he has taken the witness stand at the trial. *United States* v. *Havens,* 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); *Harris* v. *New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). Essentially the deficiency claimed is the insufficiency of the record to demonstrate a knowledgeable waiver by the defendant of his right to counsel. Since a resolution of that question favorable to him would not have barred the use of the resulting testimony for the limited purpose for which it was used, no infringement of a constitutional right could be found in any event. We have no need, therefore, to consider the issue further.

## II

With respect to the evidence of other misconduct introduced at the trial, the defendant claims error on several grounds.

The evidence of other misconduct to which the defendant objected at the trial consisted of the testimony of several witnesses that he had solicited them at different times to set fire to certain properties which he owned, including 778–780 George Street, the subject of the arson charged against him, and that he suggested a method of starting a fire similar to the one claimed to have been used to burn that property. The trial court admitted this evidence as having sufficient probative value in showing intent, motive and a system of criminal activity on the part of the defendant to outweigh its prejudicial tendency. *State* v. *Brown,* 169 Conn. 692, 701, 364 A.2d 186 (1975); *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970). The defend-

ant appears to recognize that the testimony of his attempts to induce others to start fires at the George Street property prior to the date when it actually burned and gave rise to this prosecution was admissible to show intent and motivation. The principal focus of his claim of error is upon the testimony of his attempts to start fires, both before and after the date of the crime for which he has been convicted, in other buildings which he owned. We agree with the trial court that this evidence was relevant to show a common scheme on the part of the defendant to have his properties destroyed by fire in a manner similar to that used for the George Street building. See *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Barlow,* 177 Conn. 391, 394, 418 A.2d 46 (1979); *State* v. *Hauck,* 172 Conn. 140, 146, 374 A.2d 150 (1976). The testimony was that the defendant suggested that the fires be ignited by using a book of matches with a lighted cigarette as a slow burning fuse. Such evidence showed a modus operandi sufficiently distinctive to have substantial probative value in indicating that the defendant suggested such a method for the George Street building, thus supporting another witness for the state who so testified. Cf. *State* v. *Ibraimov,* 187 Conn. 348, 446 A.2d 382 (1982). Where evidence is relevant to show a common plan or an unusual technique used to commit a crime, we see no reason to exclude it simply because the acts of the defendant involved occurred subsequent to the crime being tried.

The defendant contends also that the trial court should have excluded at least some of the evidence of his other misconduct because so much of it was presented at the trial that he was severely prejudiced. The fact that such evidence does not merely

show criminal tendencies but is significant in proving some of the issues in a case does not alone justify its admission. The court must also balance its probative value against its prejudicial tendency. *State* v. *Falby,* supra; *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980); *State* v. *Holliday,* supra. In this case the court considered the proffered evidence in the absence of the jury and decided that its probative value outweighed any prejudice to the defendant. We find no abuse of discretion in this conclusion of the trial court. The jury was adequately instructed upon the limited purpose for which this evidence should be considered. The evidence was of great value in proving motivation, intent and identity, highly important issues in the case. The evidence was confined to solicitations of others to start fires and did not include evidence of actual conflagrations causing injury to other persons. The burden which the state has to satisfy the trier of guilt beyond a reasonable doubt must be borne in mind in deciding whether some relevant evidence should be excluded on the ground that it may not be absolutely necessary. We conclude that the trial court did not abuse its discretion in admitting the evidence of other misconduct. *State* v. *Falby,* supra; *State* v. *Barlow,* supra; *State* v. *Brown,* supra, 702.

## III

The next claim of error is the court's refusal to prohibit the state from using for the purpose of impeaching the defendant two prior felony convictions, one for breaking and entering in 1953 and the other for carrying a pistol without a permit in 1958. When his motion to suppress this evidence was denied, the defendant proceeded to mention

them in his direct examination, testifying that he was eighteen at the time of the first conviction and five years older when the second occurred. The state referred briefly to these convictions in cross-examining the defendant. The defendant claims that the trial court abused its discretion in allowing the use of these convictions because of their remoteness and lack of significance upon credibility.

General Statutes § 52-145 removes the common-law disqualification of a witness convicted of an infamous crime to testify, but it also provides that "such . . . conviction may be shown for the purpose of affecting his credit." *Card* v. *Foot,* 57 Conn. 427, 433, 18 A. 713 (1889). When difficulties arose in the trial courts in deciding which crimes were "infamous" or involved "moral turpitude," we substituted for those criteria as tests of admissibility a simpler rule that "a conviction of a crime, whether or not the crime is denominated a felony, is admissible under § 52-145, only if the maximum permissible penalty for the crime may be imprisonment for more than one year . . . ." *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341 (1965) ; see *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 508, 111 A. 861 (1920). The defendant concedes that both of his convictions were punishable by imprisonment for more than one year and would meet the requirements of this test for admissibility. We have recognized, however, that the inherent authority of the trial court to exclude evidence where its prejudicial tendency outweighs its probative value is particularly applicable to prior convictions otherwise qualifying for admission. *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970)."We believe that if a defendant testifies and, thereafter, evidence of a prior convic-

tion is offered under circumstances in which its prejudicial effect far outweighs its materiality and relevancy on the issue of credibility in a criminal trial its admissibility should be determined by the exercise of a sound judicial discretion." Ibid. Presumably that discretion would dictate exclusion of the evidence where prejudice "far outweighs" probative value.

Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. See *State* v. *Marquez,* supra, 50.

Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility. "Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). The former convictions of this defendant were not similar to the arson charges for which he was convicted in this case. The trial judge also was not confronted with the extreme situation where his ruling might have induced the defendant to refuse to testify in his own defense for fear that his criminal record would be brought before the jury. See *Gordon* v. *United States,* supra, 940. The defendant had elected to take the stand and had

actually given part of his testimony before the jury at the time of the decision upon the motion to suppress. He did not regard the possibility that his former convictions would be admitted as sufficiently detrimental to deter him from testifying. It cannot be doubted, nevertheless, that some degree of prejudice is generated when evidence of any criminal record on the part of a defendant comes before the trier. See *United States* v. *Puco,* 453 F.2d 539, 542 (2d Cir. 1971).

The claim that the crimes of breaking and entering and of carrying a pistol without a permit, for which the defendant was previously convicted, have little or no relationship to credibility would be more persuasive absent our experience with the lack of uniformity in rulings when the criteria were "infamous crimes" and "moral turpitude." *Heating Acceptance Corporation* v. *Patterson,* supra, 470–71; *Drazen* v. *New Haven Taxicab Co.,* supra, 505; see *State* v. *Marquez,* supra, 53. Different views about the significance of particular criminal activity as demonstrating an inclination to falsify are widely held. Strictly speaking, only a conviction for perjury or some kind of fraud bears directly upon untruthfulness. In *Gordon* v. *United States,* supra, 940, Judge (now Chief Justice) Warren E. Burger declared that "[i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity" and that "[a]cts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity." A different opinion expressed by equally eminent authority is that a conviction of a

crime demonstrates a bad general character, a "general readiness to do evil" and that such a disposition alone supports an inference of a "readiness to lie in the particular case . . . ." *Gertz* v. *Fitchburg R. Co.,* 137 Mass. 77, 78 (1884) (Holmes, J.). Rule 609 of the federal rules of evidence attempts to accommodate these conflicting views of human nature by making a conviction admissible for impeachment of a witness "only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment." Fed. R. Evid. 609(a). A similar provision is contained in the uniform rules of evidence. Unif. R. Evid. 609, 13 U.L.A. 276 (1980). The adoption of this rule has not solved the problem of inconsistent rulings upon whether such crimes as larceny or breaking and entering fall within the second category as crimes which "involved dishonesty," convictions for which are admissible without undergoing the balancing test prescribed for crimes having no special relationship to veracity. 3 Weinstein & Berger, Weinstein's Evidence ¶ 609[04].

This court has not imposed any restriction upon the nature of the crime which may be used for impeachment, except in terms of its seriousness as measured by the punishment provided by statute, and we have allowed for that purpose the use of convictions of such crimes as manslaughter; *State* v. *Shaw,* 185 Conn. 372, 383–84, 441 A.2d 561 (1981); narcotics violations; *State* v. *Hall,* 165 Conn. 599, 606, 345 A.2d 17 (1973); carrying a pistol

without a permit, one of the offenses involved here; *State* v. *Miller,* 186 Conn. 654, 443 A.2d 906 (1982); see *State* v. *Bitting,* 162 Conn. 1, 8, 291 A.2d 240 (1971); and carrying a dangerous weapon. *State* v. *Jones,* 167 Conn. 228, 236, 355 A.2d 95 (1974). We have referred to "the legislative judgment that records of crimes involving sentences of more than one year affect the credibility of a witness." *State* v. *Bitting,* supra, 10. In this respect our rule is similar to the portion of the federal rule which applies to convictions having no special relationship to veracity, but it does not create a special exception for those directly related thereto, exempting such convictions from any punishment criterion and also from judicial scrutiny for probative value vis-a-vis prejudice. 3 Weinstein & Berger, supra.

The probative value of a conviction upon the credibility of a witness obviously is related to the time when the crime occurred. "The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness." *Gordon* v. *United States,* supra; see annot., 67 A.L.R.3d 824. Both convictions of this defendant were more than twenty years old at the time of trial. Rule 609(b) of the federal rules of evidence establishes a limit of ten years from conviction or release from resulting confinement upon the use of a conviction for impeachment "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially out-

weighs its prejudicial effect."[1] The uniform rules of evidence contain a similar ten year limitation but allow no exception. Unif. R. Evid. 609(b), 13 U.L.A. 276 (1980). At one time this court took the view that the age of a conviction "went to its weight, not to its admissibility." *State* v. *Robington,* 137 Conn. 140, 145, 75 A.2d 394 (1950). More recently we have indicated that remoteness in time, like relevance of the crime to veracity, is a factor to be weighed by the trial court in exercising its discretion. *State* v. *Jones,* supra, 237; see *State* v. *Bitting,* supra, 8–11. Under the federal standard, rule 609(b), which is not ours but may serve as a rough bench mark in deciding whether trial court discretion has been abused, convictions having some special significance upon the issue of veracity surmount the standard bar of ten years and qualify for the balancing of probative value against prejudice. *United States* v. *Spero,* 625 F.2d 779 (5th Cir. 1980) (twenty-two year old grand larceny conviction); *United States* v. *Brown,* 603 F.2d 1022, 1029 (1st Cir. 1979) (burglary and petit larceny convictions thirteen-seventeen years old).

A conviction, like one of those before us, for breaking and entering with criminal intent, a crime commonly associated with larceny and, therefore, implying dishonesty in the general sense, has been regarded by some courts as sufficiently related to credibility to warrant admission under this standard. *United States* v. *Brown,* supra; *United States* v. *Bianco,* 419 F. Sup. 507, 509 (E.D. Pa. 1976), aff'd, 547 F.2d 1164 (3d Cir. 1977); see 3 Weinstein & Berger, supra. After all, the infamy of Watergate began with a break-in. Even this lumping of a

---

[1] Advance written notice of intent to use a conviction older than ten years is also required. Fed. R. Evid. 609(b).

desire to obtain another's possessions unlawfully with a tendency to prevaricate, however, would lend no support to the admission of the defendant's twenty-one year old conviction for carrying a pistol without a permit, which is related to credibility only on the theory of malus in uno, malus in omnibus.

In certain cases another factor has been regarded as significant and that is the extent to which felony convictions have been used to discredit witnesses for the prosecution. Where a case may turn upon the comparative credibility of the defendant and a prosecution witness whose criminal record has come before the trier, it has been thought that the picture presented is less distorted if the criminal background of the defendant is also made known. *United States* v. *Spero,* supra, 781; *United States* v. *Brown,* supra, 1028; *United States* v. *DiVarco,* 484 F.2d 670, 677 (7th Cir. 1973); *Gordon* v. *United States,* supra, 941. One of the principal witnesses for the state in this case had been convicted of bank robbery and possession of a controlled drug in 1976, as well as arson in the first degree for his part in connection with the fire at 778–780 George Street. These convictions, however, were not subject to the infirmity of remoteness, like those of the defendant, and it was the state which first elicited evidence of them by resorting to the stratagem, followed also by the defendant, of having the witness reveal his transgressions prior to cross-examination.

The reference in the state's brief to the personal history testimony which the defendant was permitted to give over objection suggests that he had placed his character in issue so that, even if the convictions would not qualify for admission to discredit him, they were admissible to rebut evidence

of his good character. The state may, of course, attack the character of an accused once he has offered evidence of his good character. *State* v. *Gilligan,* 92 Conn. 526, 531, 103 A. 649 (1918); *State* v. *Jerome,* 33 Conn. 265, 269 (1866). We do not believe, however, that the limited biographical sketch given by the defendant had the effect of placing his character in issue. At no time did he refer to his character or indicate that his life had been exemplary. Cf. *People* v. *Hinksman,* 192 N.Y. 421, 85 N.E. 676 (1908). At most the evidence indicated that he was a hard worker, a characteristic unrelated to any trait related to the crime charged. See *State* v. *Blake,* 157 Conn. 99, 104, 249 A.2d 232 (1968); *State* v. *Campbell,* 93 Conn. 3, 10, 104 A. 653 (1918). Normally the character of a defendant is placed in issue only when he calls a witness to testify for that purpose. See *United States* v. *Masino,* 275 F.2d 129, 133 (2d Cir. 1960); *United States* v. *Tomaiolo,* 249 F.2d 683, 689 (2d Cir. 1957); cf. *Barnes* v. *State,* 24 Ga. App. 372, 100 S.E. 788 (1919).

In evaluating the separate ingredients to be weighed in the balancing process, there is no way to quantify them in mathematical terms. The probative value for credibility purposes of both convictions was greatly diminished by the extended period of time which had elapsed since their occurrence. The conviction for breaking and entering, a crime regarded as having more than peripheral bearing upon honesty, conceivably might have weathered this erosion of more than two decades sufficiently to have some viability for impeachment purposes. No such justification can be found for admitting the conviction for carrying a pistol without a permit.

On the other side of the scale, the prejudice entailed by the trier's knowledge of these convictions was substantially attenuated by several circumstances. The dissimilarity of the crime of arson charged against the defendant in this case to the crimes for which he was previously convicted lessens the likelihood that the jury drew any inference of propensity. The defendant was found not guilty of larceny, as charged in the third count of the information, an offense more clearly related to his earlier conviction for breaking and entering. This result is some indication that the jury heeded the court's unchallenged instruction on the limited purpose for which the defendant's criminal record could be used. The crimes of breaking and entering as well as carrying a pistol without a permit, unlike murder or some other violent offense, are not of such a serious or degrading nature that the jury might have been influenced by the knowledge that the defendant had committed them many years before. Cf. *United States* v. *Cavender,* 578 F.2d 528, 534 (4th Cir. 1978) (twenty-five year old sodomy conviction held inadmissible). Although we do not endorse the notion that evidence of the criminal record of a prosecution witness may always justify the admission of such evidence against a defendant, it cannot be gainsaid that the effect of such character tarnishment is diminished where an opposing witness has been similarly besmirched. As noted previously, the defendant was not deterred from testifying in his own defense by his realization that the jury would probably learn of his former convictions. It was not a wholly unreasonable exercise of the court's discretion to admit the conviction of the defendant for breaking and entering, despite its antiquity, since it could be said still to retain sufficient probative value for credibility to out-

balance the rather minimal prejudice which arose from its admission under all the circumstances of this case. Whatever significance upon credibility the conviction for carrying a pistol without a permit may once have had under the general lawbreaker rationale, however, must have entirely dissipated by the date of trial and its admission cannot be justified. We conclude, nevertheless, that this error was harmless because it is so highly improbable that any additional prejudice arising from knowledge by the jury of this second conviction affected the outcome.

## IV

The defendant has made two claims of error with respect to the jury instructions: (1) that the charge upon the requisite intent for holding him accountable as an accessory to arson was incorrect; and (2) that he was prejudiced by an erroneous reference to one of the prosecution witnesses as an accomplice.

## A

No exception was taken at the trial, as required by Practice Book § 854, to the portion of the charge relating to intent which the defendant now maintains was erroneous. See Practice Book §§ 315, 3063. Nevertheless, since the claim of error implicates an essential element of the offense, it is reviewable under the exceptional circumstances doctrine applicable to errors of constitutional dimension. *State* v. *Miller,* supra, 660–61; *State* v. *Evans,* supra, 70.

The challenged portion of the charge is as follows: "In order to find the accused guilty of this offense, the accused *or* the person with whom he is acting as an accessory or accomplice, under the

other statute, must have specifically intended to destroy or damage the building." (Emphasis added.) The use of the disjunctive "or" in this passage, as the defendant contends, implies that it was unnecessary for the defendant to have actually intended to burn his building so long as the person he was aiding and abetting as an accessory had such intent. "The accessory statute, § 53a-8, sets forth the element of intent as a twofold require-ment: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original.) *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979). The state concedes that the trial court's statement of the legal principle was incorrect, but maintains that other portions of the charge correctly described the requisite intent in such a fashion as to render this error harmless.

We have had frequent occasion in recent years to consider whether a misstatement in a charge upon the element of intent has been sufficiently cured by other instructions as to render it non-prejudicial under the applicable standard that the harmlessness of such a constitutional error must be established beyond a reasonable doubt. *State* v. *Cosgrove,* 186 Conn. 476, 481, 442 A.2d 1320 (1982). The court explained to the jury that the defendant was accused, not as the person who actu-ally committed the arson, but as an accessory. The statute, General Statutes § 53a-8, was read to the jury: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for

such conduct and may be prosecuted and punished as if he were the principal offender." The court stated that inactive presence at the commission of the crime or passive acquiescence or innocent performance of acts which actually aid in the perpetration of the offense are not sufficient for guilt. "To find the defendant guilty of arson in the first degree . . . you will have to find a criminality of intent and an unlawful purpose or purposes in common with the actual perpetration of the crime. In other words, a defendant may not be found guilty as an accessory or accomplice for the doing of innocent acts which might unintentionally assist in the commission of a crime. . . . So, you must find a criminal intent involved." The essential elements of the crime were set forth to include the requirement that "the accused, or under the accessory statute, another person with whom the defendant acted as an accessory or accomplice, starts a fire, and intends to destroy or damage a building . . . ." After discussing the first element of "starting or causing a fire," the court said that the second element of the offense was the intention to destroy or damage a building. It was at this point that the single sentence relied upon by the defendant and previously quoted appears in which the court used the disjunctive rather than the conjunctive. The court referred to the statutory definition of intent as a "conscious objective . . . to cause such result or to engage in such conduct." Negligent acts were excluded as a basis for criminal liability and an example to illustrate this principle was given. The permissibility of an inference of intention from conduct was next discussed, notably without mention of any presumption. *State* v. *Cosgrove,* supra. The court then advised the jury that the statutory definition of intention as a conscious objective

applied to the mental state required for commission of an offense under the accessory statute to which reference previously had been made. After reviewing the charge in its entirety we are firmly convinced that there is no reasonable possibility that the inadvertent use of "or" rather than "and" in the sentence involved misled the jury as the defendant contends.

## B

The defendant did properly except to the reference made by the court to a prosecution witness as an accomplice. This witness had no connection with the arson of the George Street building which was the subject of the trial, but she did testify that the defendant had once solicited her to burn another building which he owned. The court was instructing the jury upon its duty to scrutinize the testimony of an accomplice with great care before crediting it when the name of this witness was erroneously included with those of two others who actually were accomplices. This erroneous reference was immediately preceded, however, by a caution that the recollection of the jury would govern, the names given were subjected to the qualification, "as I recall it," and the court again deferred to the recollection of the jury.

We are unable to discern any prejudice which could possibly have arisen from this inadvertence. If anything the mistaken inclusion of this witness with the other accomplices would tend to have discredited her testimony upon an inappropriate ground, a consequence favorable to the defendant. Although the court should have corrected its slip

once alerted by the exception taken by the defendant, we conclude that the defendant suffered no harm from its failure to do so.

There is no error.

In this opinion the other judges concurred.