## State of Connecticut *v.* Keith Cosby
### (2507)

Hull, Borden and Daly, Js.

Argued December 11, 1985—decision released February 11, 1986

*Erskine D. McIntosh,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *John Smirga* and *John M. Massameno,* assistant state's attorneys, for the appellee (state).

Borden, J. The defendant appeals from the judgment of his conviction, after a jury trial, of attempted

larceny in the first degree by extortion, in violation of General Statutes §§ 53a-49 (a) and 53a-122, and of larceny in the fourth degree, in violation of General Statutes § 53a-125 (a). The sole issue in this appeal is whether the defendant's constitutional right of confrontation includes the right to impeach a state's witness by use of a prior narcotics conviction, so as to afford him an *Evans* review of the trial court's preclusion of such impeachment. See *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We hold that it does not, and find no error.

The victim, Jane Regnemer, lost her purse while shopping. She was then staying at the home of a friend, Susan Virgilio. Over the next several days, Regnemer received many telephone calls from the defendant in which he indicated that he had her purse. He demanded money, sex and drugs in exchange for its return, and he threatened to destroy it unless she complied. After being notified by her bank that someone was trying to cash one of her checks, she called the police. On their advice, when the defendant next called she arranged to meet him in a parking lot under police surveillance. The defendant approached her car, she confirmed that he was the man who had called her, and she gave a prearranged signal to the police who arrested the defendant. The purse was subsequently recovered from the apartment of the defendant's girlfriend.

The trial took place in mid-March, 1982. Virgilio testified that upon returning from shopping Regnemer told her that she had lost her purse. She further testified that she had received, at her home, numerous telephone calls for Regnemer, that she spoke to the caller when Regnemer was not able to come to the phone, and that the caller always insisted that Regnemer come to the phone immediately. She also listened in on some of the conversations between the defendant and Regnemer, and testified regarding those conver-

sations. She further testified that after the defendant was arrested, he called her home and threatened her life and Regnemer's life.

Prior to Virgilio's testimony, the state moved in limine to exclude evidence of her three prior felony narcotics convictions, one on March 28, 1972, and two in August, 1972. The defendant objected to the state's motion, but did not claim in his objection that he was constitutionally entitled to cross-examine Virgilio by use of those convictions. The trial court, performing its classic and traditional weighing process; see *State v. Nardini*, 187 Conn. 513, 447 A.2d 396 (1982); found that the prejudicial effect of the convictions outweighed their probative value on Virgilio's veracity, and exercised its discretion by granting the state's motion in limine. The defendant excepted.

The defendant's claim on appeal is limited to the argument that the trial court's ruling denied him his constitutional rights of confrontation under the federal and state constitutions.[1] He does not challenge the discretionary ruling of the trial court in weighing the probative value of the prior convictions against their prejudicial effect. See *State v. Heinz*, 3 Conn. App. 80, 86–87, 485 A.2d 1321 (1984). Recognizing that he did not raise the constitutional claim before the trial court, the defendant seeks review of his claim in this court under the "by now all too familiar *Evans* bypass." *State v. Grant*, 6 Conn. App. 24, 27, 502 A.2d 945 (1986). The state concedes in its brief that the defendant's claim is reviewable under *Evans*. We conclude, nonetheless, that it is not reviewable under *Evans*, and we therefore do not consider it.

---

[1] Although the defendant relies on both the sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for disparate treatment between the two. We see no reason to undertake such an analysis. See *State v. Braxton*, 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985).

We have recently pointed out that an *Evans* review involves a three-pronged analysis: (1) whether the record supports the defendant's claim that the trial court's action raises a question of fundamental constitutional dimension; (2) if so, whether the trial court's action was erroneous; and (3) if there was error, whether it requires reversal. *State* v. *Grant,* supra. Careful analysis of the defendant's claim discloses that precluding the defendant from cross-examining Virgilio on the basis of her prior narcotics convictions does not raise a question of fundamental constitutional dimension. "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. In this instance, the defendant has put a constitutional tag on a nonconstitutional claim." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

In *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1973), the Supreme Court held that cross-examination of a state's witness for bias or motive, based on the status of the witness as an adjudicated juvenile delinquent then on probation, was within the defendant's constitutional right of confrontation as "a proper and important function of the constitutionally protected right of cross-examination." Id., 316–17. The Court drew the distinction between, on the one hand, cross-examination on the basis of bias or motive which is constitutionally protected and, on the other hand, impeachment by "[t]he introduction of evidence of a prior crime [which] is . . . a general attack on the credibility of the witness." Id. Cross-examination of a witness by use of his prior convictions is one way by which "the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony." Id. In a brief concurring opinion, Justice Stewart made clear the limited boundary of the holding the case:

"I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." Id., 321.

There is some authority for a more expansive reading of *Davis* v. *Alaska,* supra, than that of Justice Stewart. See, e.g., *State* v. *Chaisson,* 458 A.2d 95 (N.H. 1983); *State* v. *Conroy,* 131 Ariz. 528, 642 P.2d 873 (1982); *State* v. *Hillard,* 398 So. 2d 1057 (La. 1981). The weight of authority, however, reads *Davis* v. *Alaska* as Justice Stewart did, namely, that the constitutional right of confrontation embraces cross-examination for bias, interest or motive, but that the use of prior convictions to impeach general credibility is subject only to the rules of judicial discretion. See, e.g., *Mills* v. *Estelle,* 552 F.2d 119, 122–23 (5th Cir. 1977), cert. denied, 434 U.S. 871, 98 S. Ct. 214, 54 L. Ed. 2d 149 (1977); *Smith* v. *United States,* 392 A.2d 990, 991–93 (D.C. Cir. 1978); *State* v. *Russell,* 625 S.W.2d 138, 141–42 (Mo. 1981); *Bilbrey* v. *State,* 594 S.W.2d 754, 756–58 (Tex. Cr. App. 1980).

Our cases have followed *Davis* v. *Alaska,* supra, in holding that cross-examination for bias, interest or motive is a constitutionally protected right. See, e.g., *State* v. *Ortiz,* 198 Conn. 220, 502 A.2d 400 (1985); *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982); *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979). They have also, at least implicitly, treated cross-examination for other purposes or based on less vital forms of attack on credibility as deserving of less protection. See, e.g., *State* v. *Vitale,* supra, 402–403 (purpose of cross-examination to elicit facts bolstering defendant's version of events); *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980) (questions relating to witness' reliability not based on bias or motive). There is no Connecticut Supreme Court case holding

that the use of a prior conviction of a state's witness, to impeach his general credibility, is within the defendant's constitutional right of confrontation.

"Courts are continually called upon to draw lines on a case by case basis." *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 81, 469 A.2d 1201 (1984) (*Peters, C. J.,* dissenting). The line drawn by the United States Supreme Court in *Davis* v. *Alaska,* supra, between bias, interest or motive, and general credibility, may not be readily apparent at first glance. Nevertheless, there are two bodies of case law which raise that line into bold relief. The first is the case law regarding the impeachment use of pending criminal charges, which are recognized for their relevance to bias, interest or motive. See *State* v. *Ortiz,* supra. The second is the case law regarding the impeachment use of prior criminal convictions. See *State* v. *Geyer,* 194 Conn. 1, 480 A.2d 489 (1984).

The cases dealing with the admissibility of pending criminal charges for impeachment purposes clearly establish that there is an "irreducible minimum of cross-examination" guaranteed by the confrontation clause of the sixth amendment. *State* v. *Ortiz,* supra, 224. " 'Cross-examination to elicit facts which tend to show motive, interest, bias or prejudice is a matter of right, and although the extent of such cross-examination may often rest in the sound discretion of the court, a denial of the right, or its undue restriction, will constitute error. . . . It is generally held that cross-examination *for this purpose* is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party.' " (Citations omitted.) (Emphasis added.) *State* v. *Cooper,* 182 Conn. 207, 213, 438 A.2d 418 (1980). Thus, because pending criminal charges are widely recognized for their particular relevance to a witness' *interest* in testifying; *State* v. *Ortiz,* supra, 224; *State* v. *Ferrara,* 176

Conn. 508, 512, 408 A.2d 265 (1979); it is violative of the confrontation clause when a court completely refuses to allow any inquiry for the purpose of exposing such areas. *State* v. *Ortiz,* supra; *State* v. *Milum,* 197 Conn. 602, 608, 500 A.2d 559 (1985).

The relevance of prior convictions, however, is less clear than the relevance of evidence of pending criminal charges, and "remains the subject of a lively policy debate." Lilly, Evidence § 81, p. 292. Nevertheless, the case law regarding the use of prior convictions for impeachment purposes has fashioned, albeit indirectly, certain definitional perimeters around the legal concept of "general credibility" referred to by Justice Stewart in *Davis* v. *Alaska.* We next turn briefly to that case law in order to elucidate Justice Stewart's point.

"Under the standards that we have recognized, prior convictions that are admissible for impeachment purposes may be segregated into two general categories. First are those crimes that by their very nature indicate dishonesty or tendency to make false statement. *State* v. *Nardini,* [187 Conn. 513, 523–24, 447 A.2d 396 (1982)]. Beyond the obvious violations such as perjury or false statement, we have recognized that crimes involving larcenous intent imply a general disposition toward dishonesty such that they also fall within this category. *State* v. *Carter,* [189 Conn. 631, 643, 458 A.2d 379 (1983)]. Convictions of this sort obviously bear heavily upon the credibility of one who has been convicted of them. . . . The second category involves convictions for crimes that do not reflect directly upon the credibility of one who has been convicted of them. *State* v. *Nardini,* supra. The theory behind the admissibility of these convictions as evidence of credibility posits that 'conviction of a crime demonstrates a bad *general* character, a *"general* readiness to do evil" . . . .

*Gertz* v. *Fitchburg R. Co.,* 137 Mass. 77, 78 (1884) (Holmes, J.).' *State* v. *Nardini,* supra, 523–24." (Emphasis added.) *State* v. *Geyer,* supra, 12.

In the present case, the witness had been previously convicted of narcotics violations, convictions which fall within the second *Geyer* category and are relevant to credibility in only the most general sense. *State* v. *Geyer,* supra, 13. It is the *"opportunity* to cross-examine . . . which forms the core of the confrontation clause." (Citation omitted.) (Emphasis added.) *State* v. *Jackson,* 198 Conn. 314, 317–18, 502 A.2d 865 (1985). The defendant was afforded ample opportunity to cross-examine this witness. Thus, the defendant's attempt to constitutionalize the trial court's exclusion of this evidence under the guise of the confrontation clause would necessitate an expansion of the core of that constitutional guarantee to include even the most general attacks upon credibility. We recognize that "the quest for truth" frequently requires that cross-examination legitimately enter into areas collateral to the main issues. *State* v. *Denby,* 198 Conn. 23, 31, 501 A.2d 1206 (1985). We are also aware that the primary interest protected by the confrontation clause is the right of cross-examination. *State* v. *Rawls,* 198 Conn. 111, 117, 502 A.2d 374 (1985). We refuse, however, "to slide too easily from confrontation to cross-examination." *California* v. *Green,* 399 U.S. 149, 174, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (Harlan, J., concurring). The confrontation clause did not merely codify the common law rules of evidence. Id., 155. We refuse to trivialize that constitutional mandate by extending its scope into areas of general credibility which lie at the outer limits of the common law of cross-examination.

We, therefore conclude that the defendant's claim on appeal fails to pass the first of the three requirements for an *Evans* review, namely, that the record supports

a claim that the trial court's action raises a question of fundamental constitutional dimension. *State* v. *Grant,* supra. Accordingly, we do not consider whether the ruling was erroneous and, if so, whether the error requires reversal.

We are aware that this conclusion means that we do not review the defendant's sole claim on appeal. This highlights a phenomenon that we cannot but note with dismay. That phenomenon is the great frequency with which the principal issues in many of the criminal appeals before this court arrive necessarily swaddled in the hopeful mantle of *Evans* because trial counsel failed to present the appellate issue properly to the trial court in the first place. See, e.g., *State* v. *Alston,* 5 Conn. App. 571, 501 A.2d 764 (1985); *State* v. *Abbott,* 5 Conn. App. 441, 449 A.2d 437 (1985); *State* v. *Evans,* 5 Conn. App. 113, 497 A.2d 73 (1985).

It is clear that the rule of review first articulated in *Evans* is a rule of principled appellate discretion designed to apply "[o]nly in [the] most exceptional circumstances . . . ." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). It is designed to apply in such circumstances where, even in the absence of the defendant's having raised the issue in the trial court, "the record adequately supports [his] claim that [he] has *clearly* been deprived of a fundamental constitutional right *and a fair trial.*" (Emphasis added.) Id., 70. It is, therefore, like its first cousin the plain error rule; see *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 402–403, 499 A.2d 64 (1985); a rule aimed at preserving the fundamental integrity of the adjudicative process and avoiding fundamental injustice, and not at simply detecting error, even of a constitutional nature.

It is not designed to protect defendants or their counsel who, "through neglect, inattention or as a trial strategy refrain from making proper objection or rais-

ing in the trial court any available constitutional defenses, confident that if the outcome of the trial proves unsatisfactory without making objections and taking exceptions and raising any available constitutional issue they may still prevail by assigning error or raising the constitutional issue for the first time on the appeal." *State* v. *Evans,* supra, 67. Thus, the "*Evans* trial court bypass to this court is a narrow constitutional path and not the appellate Champs Elysees." *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). Apparently, the defense trial and appellate bar has not heeded this "word to the wise"; id.; and has continued to regard it, if not as a Champs Elysees, at least as a Boulevard Saint Michel.

The policies behind the requirement that claims be made at trial in order to be reviewed on appeal are "both ancient and sound"; *State* v. *Hinckley,* 198 Conn. 77, 81, 502 A.2d 388 (1985); and have been often stated. It is rare that a claim which the defendant did not think important enough to raise at trial will require reversal of his conviction. Requiring such claims to be made at trial permits their correction before it is too late. It avoids needless multiple proceedings which are neither in the defendant's nor the public's interest, and which contribute to the economic waste of court congestion. *State* v. *Kurvin,* 186 Conn. 555, 563–66, 442 A.2d 1327 (1982); *State* v. *Torrence,* 1 Conn. App. 697, 704–705, 483 A.2d 622 (1984), aff'd, 196 Conn. 430, 493 A.2d 865 (1985).

The trial of a criminal case, and the ensuing appeal from a judgment of conviction, are not separate and distinct proceedings divorced from one another. They are part of the continuum of the process of adjudication. Stated in the most elementary terms, the trial seeks to determine whether the state has proven the defendant guilty beyond a reasonable doubt. The appeal seeks to determine whether, in the process of that adju-

dication, the trial judge committed error which requires either a new trial or a judgment of acquittal.

The trial judge presiding over a criminal case is not engaged in taking a Kafkaesque academic test which he may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him. Criminal defendants and their counsel, like civil litigants and their counsel; see *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 492 A.2d 223 (1985); must take some modicum of responsibility for conserving scarce judicial resources. They must diligently ensure that, "subject to certain sharply delineated constitutional exceptions"; *State* v. *Kurvin,* supra, 564; an appeal presents for review rulings which the trial court made, and that the appeal is thus truly part of the adjudicative continuum. The claim raised by the defendant in this appeal falls neither within that continuum nor within the limited exceptions to it.

There is no error.

In this opinion the other judges concurred.