## Dante Nardini *v.* John Manson, Commissioner of Correction
### (4233)

Borden, Daly and Bieluch, Js.

Argued October 15, 1986—decision released March 10, 1987

*Charles Hanken,* with whom, on the brief, was *Richard Emanuel,* for the appellant (petitioner).

*Richard N. Palmer,* special assistant state's attorney, for the appellee (respondent).

Bieluch, J. The petitioner, Dante Nardini, seeks his release from imprisonment under sentences imposed after two criminal convictions, claiming that he had been denied both due process of law and the effective assistance of counsel by the use, at his jury trial and at his sentencing, of two prior felony convictions obtained when he was not represented by counsel. After a full evidentiary hearing, the court denied his petition for a writ of habeas corpus. He has appealed from that judgment. We find error.

The record discloses a factual background of long duration and sustained litigation. On January 25, 1979, the petitioner was found guilty by a jury of conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-111 (a) and 53a-48, and also of arson in the first degree in violation of General Statutes § 53a-111 (a). The jury found him not guilty on a third count of larceny in the second degree. He was sentenced by the court to a term of eight to sixteen years on the first count and to a consecutive term of ten to twenty years on the second count, for a total effective sentence of eighteen to thirty-six years. After a hearing, the Sentence Review Division left the terms of the two sentences intact, but ordered that they be served concurrently for a total effective sentence of ten to twenty years. After an appeal by the state from the sentence reduction with permission of the presiding judge; General Statutes § 54-96; the Supreme Court upheld the modified sentences in *State* v. *Nardini,* 187 Conn. 109, 445 A.2d 304 (1982).

At his jury trial, and subsequently at his sentencing and in the proceedings before the Sentence Review Division, the petitioner was represented by a special public defender. At trial, the petitioner testified in his own defense and denied his guilt of the crimes. Before he took the witness stand, his counsel moved to suppress evidence of two prior felony convictions, a conviction in 1953 for breaking and entering and a conviction in 1958 for carrying a pistol without a permit, which had been offered for the purposes of impeaching his credibility. The reasons given in support of this motion were (1) a concern that the jury would be unable to follow the court's instructions limiting their consideration of the convictions solely for impeachment purposes, (2) the remoteness and age of the convictions, and (3) that they did not bear sufficiently upon credibility. The court initially reserved its ruling, expressing some

concern over the age and remoteness of the convictions. In the meantime, the petitioner began his preliminary testimony.

Ultimately, the trial court ruled that it would allow the use of the two felony convictions for impeachment purposes, but stated that it would "give a limiting instruction and stress the length of time that ha[d] elapsed." The petitioner's counsel excepted to the court's denial of his motion to suppress the prior felony convictions, but stated his intention to inquire on direct examination of his client about them, without intending "to have my asking of the questions constitute a waiver of what I consider to be an incorrect ruling of the court on this point."

The petitioner immediately thereafter resumed his testimony and the following colloquy took place:

"Q. [By Mr. Tiernan] Mr. Nardini, let me ask you now, please, is it so that in 1953, you were convicted of the crime of breaking and entering?

"A. [The Defendant] Yes, I was.

"Q. And, that was 1953?

"A. Yeah. I was about eighteen, nineteen years old, I guess.

"Q. All right. And, in 1958, were you convicted of the offense of carrying a pistol without a permit?

"A. Yes.

"Q. All right. And, you were five years older at the time, approximately?

"A. Four or five years older, whatever, yeah."

After this statement of his criminal record, the petitioner continued his direct testimony. On cross-examination he was asked only the following questions pertaining to his two prior convictions:

"Q. [By Ms. Galvin] And, Mr. Nardini, in 1953, you were convicted of a felony of breaking and entering, isn't that correct?

"A. [The Defendant] Yes, ma'am.

"Q. In 1958, you were convicted of the felony of carrying a pistol without a permit, weren't you?

"A. Yes, ma'am."

In its charge to the jury after the completion of the evidence and summations of counsel, the court instructed the jury on its use of prior convictions in evaluating the testimony of the petitioner and several witnesses called by the state.[1] No exception was taken to this instruction. Subsequently, the petitioner was convicted by the jury on the first and second counts and acquitted on the third count. The petitioner appealed[2] these convictions to the Supreme Court,

---

[1] The court charged as follows:

"Now, the matter of impeachment by showing of prior convictions is a special matter.

"In this case, there was evidence of prior convictions both of several witnesses called by the State and of Mr. Nardini himself.

"Now, we have a statute that provides that no person shall be disqualified as a witness because of his conviction of a crime or crimes. But that such prior conviction may be shown for the purpose of affecting that person's credibility and only for that purpose to weigh in considering and evaluating believability.

"The evidence you have heard concerning prior criminal convictions you may consider on the question of what weight you think that particular witness's testimony deserves under the circumstances.

"As I said, such evidence may be used only on the question of credibility.

"You should consider when you are evaluating testimony in that regard of the age of prior convictions and consider the length of time that has elapsed in determining what probative value the convictions have on the issue of credibility and what weight you should give to such prior convictions.

"That is one factor, plus the nature of the prior convictions you should also consider in deciding in what way to use them in evaluating credibility."

[2] On that appeal, the petitioner was represented by attorneys from the Office of the Chief Public Defender.

claiming, inter alia, that the trial court had erred in admitting his two prior felony convictions for impeachment purposes.

The Supreme Court affirmed the defendant's convictions. *State* v. *Nardini,* 187 Conn. 513, 447 A.2d 396 (1982). After observing that the petitioner was not deterred from testifying in his own defense by his realization that the jury would probably learn of his former convictions, the court concluded that "[i]t was not a wholly unreasonable exercise of the court's discretion to admit the conviction of the defendant for breaking and entering, despite its antiquity, since it could be said still to retain sufficient probative value for credibility to outbalance the rather minimal prejudice which arose from its admission under all the circumstances of this case." Id., 529–30. Although the court found error in the admission of the 1958 conviction for carrying a pistol without a permit because of its nature and remoteness, it did "conclude, nevertheless, that this error was harmless because it is so highly improbable that any additional prejudice arising from knowledge by the jury of this second conviction affected the outcome." Id., 530.

On February 23, 1983, the petitioner commenced this habeas corpus action. The petition was in two counts. The first count was based on the alleged illegal use for credibility impeachment of the 1953 felony conviction for breaking and entering, and the second was based on the alleged illegal use for impeachment of the 1958 felony conviction for carrying a pistol without a permit. The right to a writ of habeas corpus was predicated in each count upon two grounds: (1) "[t]he introduction into evidence, at petitioner's 1979 jury trial, of his invalid 1953 felony conviction [and 1958 felony conviction], violated his right to due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article

First, Section 8 of the Connecticut Constitution''; and (2) ''[a]s a result of defense counsel's actions/inactions with respect to the use of petitioner's 1953 conviction [and 1958 conviction] at his trial and sentencing, the petitioner was denied the adequate assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article First, Section 8 of the Connecticut Constitution.''

The felony convictions were alleged to be illegal because in each instance they resulted from a guilty plea when he was not represented by counsel and had not been advised of his right to the assistance of counsel as an indigent, and because the guilty pleas had not been made knowingly, intelligently and voluntarily. For that reason, their use for impeachment of his credibility violated his right to due process of law. His claim of inadequate assistance of counsel arose from counsel's failure to assert that the uncounseled convictions could not be invoked at trial and sentencing because of their illegality after petitioner had advised counsel of their circumstances. In his prayer for relief, he claimed (1) release from custody, (2) reversal of the convictions, and (3) a new trial.

After an evidentiary hearing, the trial court denied the petitioner's application for a writ of habeas corpus. A synopsis of the court's memorandum of decision is contained in these concluding statements: ''[I]n this case, however, petitioner's counsel's neglect as to the uncounseled convictions did not reach such constitutional dimensions as to deprive the petitioner of a fair trial. Moreover, the Connecticut Supreme Court, on appeal of petitioner's case, noted that the use of the prior convictions to impeach petitioner were of either minimal prejudice or harmless error. As a consequence, this use could not have contributed to petitioner's conviction. On the basis of the foregoing, this court con-

cludes that the petitioner failed to sustain his burden of proving ineffective assistance of counsel." From this judgment, the petitioner has appealed after a grant of certification.

After filing his appeal, the petitioner moved that the trial court "further articulate the basis of its decision in this action, with specific reference to the Petitioner's claim that he was deprived of his state and federal constitutional rights to due process of law." This motion was denied with the notation: "Claim of denial of due process was dealt with in this court's opinion and also in the Supreme Court opinions referred to therein."

The sole issue on appeal is whether, in denying the petition for a writ of habeas corpus, the court erred in concluding that the petitioner's right to due process of law, and right to the effective assistance of counsel, were not violated by the use, at petitioner's criminal trial and sentencing, of prior uncounseled felony convictions.

From the evidence, the following facts could reasonably have been found: In 1953, the petitioner was arrested and arraigned in the Hamden Town Court on the charge of breaking and entering, an acknowledged felony. Being eighteen years of age and unemployed, he appeared without counsel. Since he was a minor,[3] a guardian ad litem was appointed in his behalf. A member of the court staff was appointed to serve as his guardian. What are now known as *Miranda*[4] warnings were not given to him. Nothing was told to him about obtaining or having a lawyer appointed to represent him. He was without funds to obtain private counsel. No one informed him that he was facing a felony

---

[3] The age of majority was reduced from twenty-one years to eighteen years by Public Acts 1972, No. 127, § 1, effective October 1, 1972 (now General Statutes § 1-1d).

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

charge. In accordance with a plea bargain offered by the prosecutor, he pleaded guilty and was given a suspended sentence with probation. The judicial inquiry now required to be made by Practice Book §§ 711 through 713 to determine that the plea of guilty was made voluntarily, with full understanding of the charge, its maximum sentence, and the waiver by plea of guilty of his constitutional rights, and that there was a factual basis for the plea was not made. The second felony conviction occurred in 1958 in the New Haven City Court after an arrest for carrying a pistol without a permit. He was then twenty-three years of age, unemployed, and living with his mother. Having been recently divorced, he was under a court order to support his former wife and child. At that time, he was wearing a back and neck brace. Because of indigency, he was without funds to retain counsel. He was not advised of his right to have an attorney appointed in his behalf nor of any of his other constitutional rights, nor was he informed that the charge against him was a felony. Without counsel, he negotiated a plea agreement himself with the prosecutor. Under its terms, he pleaded guilty to the charge and received a thirty day suspended sentence with probation. The canvass of his guilty plea now required was not made by the judge before its acceptance and his conviction.[5]

The petitioner's search for certified copies of these felony convictions was unsuccessful. On April 22, 1983,

[5] Municipal courts then had limited jurisdiction over felony crimes. "In a prosecution for any crime the punishment for which shall be a fine of not more than one thousand dollars or imprisonment for not more than five years or both, any municipal court may take final jurisdiction thereof, whenever, upon conviction, the court shall determine that no greater punishment ought to be imposed than that which it may lawfully inflict; provided, in all cases, the accused may appeal from the judgment so rendered as provided by law in other criminal cases." General Statutes (Rev. of 1949) § 8733. This limited felony jurisdiction of municipal courts was continued in General Statutes (Rev. of 1958) § 54-7.

the Superior Court records center advised his counsel that copies of the conviction records were unavailable. He was informed that, because of the age of the cases, the "[f]iles from the old City Courts have been destroyed" under the authority of Practice Book § 403.[6]

On September 6, 1972, the petitioner was indicted by the grand jury in the United States District Court, District of Connecticut, as follows: "On or about December 6, 1971, in the District of Connecticut, having been previously convicted [in 1953] of a crime punishable by a term of imprisonment exceeding one year, [Dante R. Nardini, Jr.] did knowingly receive, possess and transport a firearm in and affecting interstate commerce . . . ." Private counsel, representing the petitioner in the federal prosecution, moved to dismiss the indictment on the ground "that the defendant was not represented by counsel in the said prior felony conviction [for breaking and entering with criminal intent] and therefore cannot now be penalized by the deprivation of that fundamental right." Thereafter, without specification of reason, the United States Attorney moved to dismiss the indictment, and the dismissal was ordered by the court on June 21, 1973.

In *Loper* v. *Beto,* 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972), the United States Supreme Court had before it a factual situation and legal issue indistinguishably similar to the facts and question presented here. In *Loper,* the petitioner for a writ of habeas corpus, Otis Loper, was brought to trial in a Texas criminal court in 1947 upon a charge of statutory rape.

---

[6] Practice Book § 403E, adopted June 2, 1979 and effective October 1, 1979, provides in relevant part: "In cases in which there has been a conviction of a felony charge and the sentence does not exceed one year, the file shall be destroyed upon the expiration of twenty years from the date of disposition." The petitioner's two prior felony convictions fell within the sweep of that rule.

For the purpose of impeaching Loper's credibility, the prosecutor was permitted on cross-examination to interrogate him about his previous criminal record. In response to this inquiry, Loper admitted to four previous felony convictions during the period 1931–1940, three in Mississippi and one in Tennessee. Thereafter, the jury found Loper guilty as charged and he was sentenced to a term of fifty years in prison.

In his habeas corpus proceeding, Loper alleged that the felony convictions used to impeach his credibility at his trial were constitutionally invalid under *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), because he had been denied the assistance of counsel in the Mississippi and Tennessee courts that had convicted him. His sworn testimony confirmed these allegations. Certified records of two convictions corroborated his testimony. The District Court denied habeas corpus relief, and the Court of Appeals for the Fifth Circuit affirmed that judgment.

The United States Supreme Court granted certiorari limited to this single constitutional question: "Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?" That is precisely the first issue under consideration in the appeal before this court.

The Supreme Court arrived at its conclusion by analyzing its relevant precedents. "The starting point in considering this question is, of course, *Gideon* v. *Wainwright,* [supra]. In that case the Court unanimously announced a clear and simple constitutional rule: In the absence of waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer.[7] The Court dealt with

---

[7] The following appears as footnote nine in the Supreme Court decision. "This constitutional rule is wholly retroactive. *Pickelsimer* v. *Wainwright,*

a sequel to *Gideon* in *Burgett* v. *Texas,* 389 U.S. 109 [88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)]. There a Texas indictment charging the petitioner with assault contained allegations of previous felony convictions, that, if proved, would have increased the punishment for assault under the state recidivist statutes. The indictment was read to the jury at the beginning of the trial. Records of two of the previous convictions were offered in evidence during the course of the trial, and it appeared that at least one of these convictions had been obtained in violation of *Gideon.* In reversing the Texas judgment, the Court said: 'To permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that . . . right.' [Id., 115]." (Footnote in original.) *Loper* v. *Beto,* supra, 481.

For the third step in the progression of its ruling, the Supreme Court relied upon its holding earlier in the same term in *United States* v. *Tucker,* 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). In *Tucker,* it appeared that previous convictions obtained in violation of *Gideon* had played a part in the determination of the length of a convicted defendant's prison sentence. To reach its ultimate conclusion, the court then authoritatively stated: "We there ruled that the Court of Appeals for the Ninth Circuit had been correct in holding that the teaching of *Burgett* required a remand of the case to the trial court for resentencing. The *Tucker* case involved only that aspect of *Burgett* that prohibits the use of invalid prior convictions to 'enhance

375 U.S. 2 [,84 S. Ct. 80, 11 L. Ed. 2d 41 (1963)]; *Kitchens* v. *Smith,* 401 U.S. 847 [,91 S. Ct. 1089, 28 L. Ed. 2d 519 (1971)]." *Loper* v. *Beto,* 405 U.S. 473, 481 n.9, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972).

punishment.' The case now before us involves the use of such convictions 'to support guilt.' For the issue of innocence or guilt in this case turned entirely on whether the jury would believe the testimony of an 8-year-old girl or that of Loper. And the sole purpose for which the prior convictions were permitted to be used was to destroy the credibility of Loper's testimony in the eyes of the jury. Unless *Burgett* is to be foresaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon* v. *Wainwright* to impeach a defendant's credibility deprives him of due process of law." (Footnotes omitted.) *Loper* v. *Beto,* supra, 482–83.

In the case before us, the petitioner's due process claim rests on two constitutional prongs. He claims that his 1953 and 1958 uncounseled felony convictions were invalid and void, and, therefore, could not be used either for impeachment purposes or for sentence enhancement. As to the second tine of this claim, the record discloses that, in her sentencing remarks, the prosecutor observed that in the presentence documents, "it's very clear there are two prior felonies, which I will grant occurred some time ago." For this reason, inter alia, she recommended to the court the imposition of the maximum consecutive sentences for an effective sentence of twenty to forty years. In its sentencing remarks, the trial court noted the petitioner's "previous criminal history" and his "disregard for the law, as evidenced in his prior criminal history and the nature of these offenses, the calculated, planned nature of the crimes." The court further remarked: "I don't think that rehabilitation seems realistic considering the nature of the offenses, the court's observation of Mr. Nardini and the previous history and so on." "The court therefore conclude[d]" that it would impose an "appropriate . . . sentence" of eight to sixteen years on the

first count and ten to twenty years on the second count to be served consecutively for a total effective sentence of eighteen to thirty-six years.[8]

In its memorandum of decision, in which it denied habeas corpus relief, the trial court made the following significant findings and controlling conclusions of law: 'In this habeas corpus proceeding, the petitioner established that when in 1953 and 1958 the municipal courts accepted his pleas of guilty of the two felonies, petitioner did not have counsel, was not advised of his right to counsel and did not waive his right to counsel. It is well established that a conviction obtained in violation of *Gideon* v. *Wainwright,* [supra] cannot be used to support guilt or enhance punishment for another offense. *Burgett* v. *Texas,* [supra]. Specifically, a prior uncounseled conviction used to impeach defendant's credibility is a deprivation of due process of law. *Loper* v. *Beto,* [supra, 483].''

On the basis of these findings of fact and conclusions of law, the court should have granted the writ of habeas corpus. By not doing so, the court erred. Instead, the court continued immediately to state: "However, the issue in this habeas corpus proceeding is whether the failure of petitioner's attorney to discover the fact that the prior 1953 and 1958 convictions were uncounseled or having been informed of that fact, his failure to urge their inadmissibility on that ground constitutes ineffective assistance of counsel."

In view of our finding of error in the trial court's failure to conclude that the petitioner's right to due process of law was violated by the use at his criminal jury trial of the two prior felony convictions for impeachment of his credibility and for enhancement of his

---

[8] As noted earlier in this decision, these sentences were modified by the Sentence Review Division to be served concurrently for a total effective sentence of ten to twenty years.

prison sentence, it is unnecessary to consider the claim of ineffective assistance of counsel.

There is error, the judgment is set aside and the case is remanded with direction to render judgment granting the writ of habeas corpus, and for further proceedings consistent with this opinion and in accordance with the law.

In this opinion the other judges concurred.