### STATE OF CONNECTICUT *v.* MARK SERGI
### (2221)

HULL, BORDEN and DALY, Js.

Argued December 12, 1985—decision released May 20, 1986

*Barbara Goren,* special public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

HULL, J. The defendant was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and (3)[1] and larceny in the first degree in violation of General Statutes (Rev. to 1979) § 53a-122 (a) (2).[2] After a trial to a jury, he was convicted of both charges and was sentenced to ten to twenty years imprisonment for the robbery conviction and five to ten years imprisonment for the larceny conviction. The defendant appeals from the judgment of conviction claiming that the trial court erred (1) in imposing consecutive sentences on each conviction, (2) in charging the jury on how to evaluate the credibility of an accomplice's testimony, (3) in denying his motion in limine to prevent the state from introducing evidence of his prior felony convictions, and (4) in admitting testimony that he had a shotgun in his house. He also asserts that he was denied effective assistance of counsel. We find no error.

The jury could reasonably have found the following facts. In September of 1980, Joseph Fappiano was employed as a cook at Valentino's restaurant on Whitney Avenue in Hamden. His duties included closing the restaurant at night and taking home the restaurant's

---

[1] General Statutes § 53a-134 provides in pertinent part: (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes (Rev. to 1979) § 53a-122, provides in pertinent part: "(a) A person is guilty of larceny in the first degree when: . . . (2) the value of the property or service exceeds two thousand dollars."

proceeds for future deposit. On September 7, 1980, Fappiano finished closing at approximately 1:30 a.m., and then left with Bill Purgatore, a waiter who worked at the restaurant. Purgatore went to his car at the front of the restaurant while Fappiano entered his car parked at the rear of the restaurant. After getting into his car, Fappiano placed a bag containing the restaurant proceeds on his front passenger seat. He then discovered that something was wrong with one of his tires. He did not stop to fix it, however, because Purgatore had already left and the parking lot was very dark. Rather, Fappiano left the parking lot, assuming he could reach home. Fappiano drove for a short time but was forced to stop when the tire deteriorated. After Fappiano stopped, a car owned and driven by Mark Reamer, pulled in front of his car. Inside that car were Reamer, Frank Wager, the defendant and another individual. Wager, a former employee at the restaurant, had occasionally stayed with Fappiano while he closed the restaurant. The defendant and the other man got out. Either the defendant or the other man went over to the driver's side of Fappiano's car. Fappiano rolled his window down and the individual then pulled an object from his belt, grabbed Fappiano, and hit him several times on various parts of his head, causing profuse bleeding. The man who had not injured Fappiano went to the passenger side of the car and grabbed the bag containing the restaurant's proceeds. The defendant and the other man then ran back to the car with the money and fled.

The defendant first claims that the trial court, by imposing consecutive sentences for his convictions of robbery and larceny, violated his constitutional right not to be punished twice for the same offense. In support of this claim, the defendant argues that robbery in the first degree and larceny in the first degree both constitute the offense of larceny with the only distinc-

tion being that robbery in the first degree is aggravated by the amount of force used, while larceny in the first degree is aggravated by the amount of property taken. Because the offenses are legally the same, the defendant contends, the trial court could not, consistent with the double jeopardy clause of the fifth amendment, impose consecutive sentences for his convictions of both.

The defendant acknowledges that this claim was not raised below but asserts that it is, nevertheless, reviewable under the fundamental rights-fair trial exception established by *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). While the state does not argue that this claim is not reviewable under *Evans,* we hold that it is not. See *State* v. *Cosby,* 6 Conn. App. 164, 166, 504 A.2d 1071 (1986) (state's concession of reviewability under *Evans* not binding on this court).

Appellate review under *Evans* of a claim of error not raised below is appropriate only where "the record adequately supports a claim that a defendant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Torrence,* 196 Conn. 430, 435, 493 A.2d 865 (1985). The defendant's double jeopardy claim certainly implicates a fundamental constitutional right. "The prohibition of double jeopardy prevents not only multiple trials, but also multiple punishments for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)." *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985). The defendant's claim that larceny in the first degree and robbery in the first degree constitute the same offense has been definitively and recently rejected by our Supreme Court in *State* v. *Boucino,* 199 Conn. 207, 224, 506 A.2d 125 (1986). The defendant in *Boucino,* as the defendant in this case, contended that sentencing on both his conviction for robbery in the first degree and his conviction for larceny in the first degree vio-

lated his double jeopardy right to be free from multiple punishments for the same offense. Applying the test established by the United States Supreme Court in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), our Supreme Court determined that because each offense requires proof of a fact which the other does not, the two offenses are not the same offenses for double jeopardy purposes. *State* v. *Boucino,* supra, 224.[3] Accordingly, the record does not adequately support the defendant's contention that he has clearly been deprived of his fifth amendment right, and we therefore decline to review this claim of error.

The defendant's second claim is that the trial court erred by failing to instruct the jury on the proper standard to apply when evaluating the credibility of accomplice testimony. At the defendant's trial, Mark Reamer, the owner and driver of the car involved in the robbery, testified and implicated the defendant. He also testified that he had participated in the crime unwittingly, and that he had pleaded guilty to aiding a robbery and had received a suspended sentence. While the trial court instructed the jury that Reamer's testimony should be "carefully scrutinized with a view to . . . evaluating [his] interest or bias," it did not, the defendant claims, tell the jury to consider Reamer's status as a "self-confessed criminal."[4] It is this omission that the defendant claims constituted error.

---

[3] The defendant also argues that application of the *Blockburger* test to larceny offenses would lead to results not intended by the legislature. It is true that "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz* v. *United States,* 450 U.S. 333, 334, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). Our Supreme Court's decision in *State* v. *Boucino,* 199 Conn. 207, 506 A.2d 125 (1986), however, resolves the question of whether the legislature intended to authorize cumulative punishment for convictions of robbery in the first degree and larceny in the first degree.

[4] While the defendant did not except to that facet of the trial court's charge to the jury which he now challenges, he did submit a written request to

The defendant's argument is without merit. While the court did not charge in the exact language suggested by the defendant, it did point out that Reamer had pleaded guilty to aiding robbery, that he had received payment for giving information to the police, and that there had been testimony that he had admitted his participation in the crime. The essence of the defendant's claim, therefore, is that the trial court did not use the words "self-confessed criminal" and did not properly emphasize the witness' status. While the trial court does have the duty " 'to caution the jury to scrutinize carefully [accomplice] testimony' "; *State* v. *Shindell,* 195 Conn. 128, 142, 486 A.2d 637 (1985), quoting *State* v. *Ferrara,* 176 Conn. 508, 512, 408 A.2d 265 (1979); there are no magic words it must use in doing so. *State* v. *Colton,* 174 Conn. 135, 141, 384 A.2d 343 (1977). Here, the point that must be included in a trial court's instruction on accomplice testimony, namely, that the jury should closely scrutinize the testimony to determine whether or not it is reliable, was fully covered. "Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge." *State* v. *Colton,* supra, 141.

The defendant's third claim is that the trial court erred in denying his motion in limine through which he sought to obtain a ruling prohibiting the state from impeaching him with three prior convictions.[5] The

charge asking the court to instruct the jury on this area. Accordingly, we reject the state's contention that this claim was not properly preserved. See Practice Book § 854.

[5] The state, relying on the United States Supreme Court's decision in *Luce* v. *United States,* 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), urges this court not to review this claim of error because the defendant did not testify. Our Supreme Court, in *State* v. *Harrell,* 199 Conn. 255, 265, 506 A.2d 1041 (1986), chose to follow *Luce.* It also determined, however, to apply, prospectively only, the *Luce* requirement that a defendant testify to preserve the claim of error "in order that those defendants who have relied on previous decisions of this court that did not require a defendant to testify will not be prejudiced by this rule." Id., 267. Accordingly, we will review the defendant's claim of error.

defendant did not testify and the evidence, therefore, was not admitted. He argues, however, that the ruling was harmful because it deterred him from exercising his constitutional right to testify.

While a defendant in a criminal case does enjoy a constitutional right to testify; *State* v. *Harrell,* 199 Conn. 255, 263, 506 A.2d 1041 (1986); "it has been recognized that [this right] does not carry with it a right to prohibit impeachment by prior convictions." Id. Accordingly, under General Statutes § 52-145 (b), as interpreted by our Supreme Court, the state may for impeachment purposes introduce evidence showing that a defendant has been convicted of a crime if the maximum permissible penalty for that crime is imprisonment for more than one year. *State* v. *Braswell,* 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). Such evidence is not automatically admissible, however. The trial court must first determine that the prejudicial effect of its admission will not far outweigh its probative value. Id., 307.

The determination of whether to admit prior convictions is within the discretion of the trial court, and its decision will be overturned on appeal only where the defendant shows that an abuse of discretion occurred. *State* v. *Binet,* 192 Conn. 618, 624, 473 A.2d 1200 (1984). An appellate court should consider three factors when determining whether the trial court abused its discretion in deciding to admit prior conviction testimony: (1) the prejudice the defendant would have suffered by admission of the evidence; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness of the prior conviction. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984).

Here, the defendant who was on trial for larceny in the first degree and robbery in the first degree, sought to prevent the admission of three convictions: a 1973 conviction for criminal attempt to commit robbery in the third degree; a 1978 conviction for burglary in the third degree; and a 1978 conviction for assault in the second degree. The defendant claims that because his prior convictions were for crimes similar to the ones with which he was charged, the prejudice that would have been generated by their admission was great. In support of this claim, he emphasizes that his conviction for attempted robbery in the third degree was extremely similar to the robbery in the first degree and larceny in the first degree charges on which he was being tried. He also argues that his prior burglary conviction, while statutorily distinct from robbery and larceny, was sufficiently similar to raise a realistic possibility that the jury would have inferred propensity to commit larceny related crimes. Finally, he asserts that the prior assault conviction was closely related to the pending charges. The attack on Fappiano, the defendant claims, was a central feature of the robbery for which he was on trial. Accordingly, the question of whether he was capable not only of larceny but also of injuring someone was a crucial question at his trial.[6] On the basis of the similarity between the prior convictions and the pending crimes, the defendant claims that the trial court erred in denying his motion in limine.

Where the state seeks to impeach a defendant by introducing evidence of his prior convictions, the possibility for prejudice is always present. The likelihood

---

[6] To prove that the defendant committed robbery in the first degree, as charged in the information, the state had to prove that the defendant used or threatened to use immediate physical force upon another person and that the defendant, or another participant in the crime, either caused serious physical injury to another person or used or threatened to use a dangerous instrument. See General Statutes § 53a-134 (a) (1) and (3).

that this will occur is, as the defendant claims, greater where the prior convictions are for crimes similar to the crimes for which the defendant is being tried. *State* v. *Nardini,* 187 Conn. 513, 522, 447 A.2d 396 (1982). Merely because the prior convictions are similar to the pending charges, however, does not mean, as the defendant seems to claim, that the prior convictions are automatically inadmissible. *State* v. *Binet,* supra, 622. Rather, the defendant bears the burden of showing the court the *specific type of harm* that would occur if the evidence were introduced. Id., 624. This the defendant did not do.[7] "Here, the record indicates that the defendant's argument in support of his motion amounted to little more than a perfunctory recitation of the prior conviction[s], a conclusory statement as to [their] prejudicial effect, and a request for a ruling. . . . Given the meager showing of potential harm put forth by the defendant, the trial court's conclusion that the defendant had not satisfied his burden of showing overriding prejudice was not unreasonable." *State* v. *Braswell,* supra, 308–309.

---

[7] We note that while the degree of prejudice likely to result from admission of the defendant's prior robbery and burglary convictions was high, so too was the probative value of those convictions. Both prior convictions were for crimes which reflect adversely on the defendant's honesty. See *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982) (breaking and entering with criminal intent implies dishonesty); *State* v. *Geyer,* 194 Conn. 1, 12, 480 A.2d 489 (1984) (crimes indicating larcenous intent imply a general disposition toward dishonesty); *State* v. *Schroff,* 3 Conn. App. 684, 688, 492 A.2d 190 (1985) (burglary conviction implies dishonesty). Prior convictions for crimes involving dishonesty, do "bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." *State* v. *Geyer,* supra. Additionally, these two convictions, five years old and ten years old, were not so remote that they no longer retained any "viability for impeachment purposes." *State* v. *Nardini,* supra, 528. This is especially so since remoteness is less of a consideration where the prior convictions are for crimes involving dishonesty. See *State* v. *Nardini,* supra, 526.

The defendant's fourth claim is that the trial court erred in refusing to strike testimony that he had a gun in his apartment the day after the robbery and in denying his motion for a mistrial based on the admission of that testimony. At the defendant's trial Dale Baber, Frank Wager's roommate, testified and implicated the defendant in the robbery. While testifying, Baber also stated that he had seen a shotgun in the defendant's apartment and that the shotgun was shorter than a regular shotgun. The defendant objected to admission of the testimony claiming, inter alia, that it was highly prejudicial and irrelevant because the state had not properly connected the shotgun to the crime with which the defendant was charged.[8] He moved for a mistrial based on admission of the evidence and, in the alternative, asked the trial court to strike the testimony. After hearing extensive argument, the trial court denied the defendant's motion for a mistrial and the defendant excepted. The court also declined to strike the testimony and the defendant again excepted.

The state is prohibited from admitting evidence that the defendant possessed " 'instruments or articles adapted to the commission of other crimes' "; *State* v. *Acklin,* 171 Conn. 105, 114, 368 A.2d 212 (1976), quoting *State* v. *Groos,* 110 Conn. 403, 407, 148 A. 350 (1930); unless it can show that the evidence has probative force concerning the charges on which the defend-

---

[8] The state asserts that this claim of error should not be reviewed because the defendant did not make a timely objection to admission of the testimony. Before the defendant objected on the grounds he now presses, he allowed the state to elicit the testimony that Baber saw a shotgun in the defendant's apartment, that it was small shotgun and that Baber believed that a sawed-off shotgun is smaller than a regular shotgun. While the state is correct in pointing out that the defendant did not object as promptly as he might have, the omission does not render this claim unreviewable. The goal of requiring a prompt objection and exception, so that the trial court will be made aware of potential claims of error in time to take appropriate corrective action; *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985); was fully satisfied by the defendant's objection.

ant is being tried. *State* v. *Acklin,* supra, 114. This rule is based on an acknowledgment that the prejudice generated by admission of such evidence is likely to be high. Accordingly, the evidence should be introduced only where its probative value outweighs its prejudicial effect. *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1979). The probative value of such evidence is great where " 'it tends to establish a fact in issue or to corroborate other direct evidence in the case.' " *State* v. *Acklin,* supra, 114, quoting *State* v. *Groos,* supra, 407.

One fact in issue during the defendant's trial was whether he, or another participant in the crime, had used or threatened to use a dangerous instrument. See General Stautes § 53a-134 (a) (3). A dangerous instrument is defined as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). The defendant does not contend that a shotgun could not be a dangerous instrument within the meaning of General Statutes § 53a-3 (7), but rather asserts that there was insufficient testimony that the object used was a shotgun, in order to overcome the prejudicial effect its admission generated.[9]

---

[9] The defendant claims that testimony about the shotgun could not be admitted because of our Supreme Court's decision in *State* v. *Williams,* 182 Conn. 262, 438 A.2d 80 (1980). We disagree. While *Williams* is factually similar to this case, it is legally distinct. In *Williams,* the defendants were charged with robbery in the first degree. The Supreme Court determined that testimony very similar to the testimony in this case was insufficient to connect a gun found on one of the defendants with the crimes with which the defendants were charged. Accordingly, it held that the trial court erred in admitting the gun into evidence. The defendants in *Williams,* however, were charged with having committed robbery while armed with a deadly weapon. A deadly weapon has a very specific statutory definition: "any weapon, whether loaded or unloaded *from which a shot may be discharged,* or a switchblade knife, gravity knife, billy, blackjack, bludgeon or metal knuckles. . . ." (Emphasis added.) General Statutes § 53a-3 (6). Here, in contrast, the defendant was charged with having committed rob-

While the testimony connecting the shotgun to the robbery and assault was minimal, it was sufficient to permit introduction of the evidence. When the state offered the shotgun testimony, it had already elicited testimony from Fappiano that he was hit several times with a short steel object, that he bled profusely as a result of the attack and that his car was scratched when it was hit by the unknown object. This testimony, which is consistent with the use of the shotgun as the object which caused Fappiano's injuries, was sufficient to establish the required nexus between the shotgun and the robbery.[10]

The defendant's final claim is that he was denied effective assistance of counsel. Our Supreme Court has recently held that "all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing"; *State* v. *Leecan,* 198 Conn. 517, 541, 504 A.2d 480 (1986); must be pursued in a habeas proceeding. Accordingly, we will not review this claim.

There is no error.

In this opinion the other judges concurred.

---

bery with the use or threatened use of a dangerous instrument. A dangerous instrument is defined as *"any* instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." (Emphasis added.) General Statutes § 53a-3 (7). Under this definition, to show that an object is a dangerous instrument, all the state need show is that it was, under the circumstances, capable of causing death or serious physical injury.

[10] The defendant also claims that the testimony was inadmissible because Fappiano had told the police officer investigating the case that he was sure that the object used to hit him had not been a gun. This is not, however, dispositive of the issue. It was within the province of the jury to reject this aspect of Fappiano's testimony. "It is the jury's role, not ours, to evaluate conflicting evidence." *State* v. *Waterman,* 7 Conn. App. 326, 340, 509 A.2d 518 (1986).