# State of Connecticut *v.* Julius Levine
# (5725)

Spallone, Daly and Stoughton, Js.

Argued October 21, 1988—decision released January 3, 1989

*William F. Gallagher,* with whom were *Thomas F. Brown* and, on the brief, *Gwen B. Weltman,* for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom were *David P. Gold,* assistant state's attorney, and, on the brief, *Pamela Weidman,* legal intern, for the appellee (state).

STOUGHTON, J. This is an appeal by the defendant from a judgment rendered after a trial to a jury, which convicted him of ten counts of illegally prescribing a narcotic substance, in violation of General Statutes § 21a-277 (a), and eight counts of illegally prescribing a controlled substance, in violation of General Statutes § 21a-277 (b). We find no error.

The defendant claims that the court erred (1) in denying his motions to suppress statements and tangible evidence, (2) in permitting the state's expert witness to give his opinion on an ultimate issue of fact, (3) in its charge to the jury in that it shifted the burden of proof on an essential element of the crimes to the defendant, incorrectly charged on the issue of good faith, and failed to refer sufficiently to the evidence, and (4) in denying his motion for acquittal.

I

The defendant, a seventy-nine year old physician and osteopath, filed motions to suppress evidence that had been seized, and to suppress any statements made by him to law enforcement authorities. Richard Moore, an agent of the drug control division of the consumer protection department, was assigned to investigate the prescribing practices of the defendant. Complaints had

been received from pharmacists, and a review suggested that there might have been "doctor shopping" or forgeries. Moore knew that the department of consumer protection had asked the defendant to give up his license to prescribe controlled substances in December, 1984. He had previously gone to see the defendant regarding possible forgeries and "doctor shopping," and he arranged to meet with the defendant on April 17, 1985, to discuss these possibilities. On that date, Moore went to the defendant's office, and the defendant identified fifty-six prescriptions as prescriptions that he had written. Moore had a tape recorder on his person but he did not inform the defendant of that fact. He showed the prescriptions to the defendant and said that there were possibilities of forgeries or "doctor shopping." He did not advise the defendant that what he said might be used against him in a criminal proceeding. After the meeting, Moore took the fifty-six prescriptions that the defendant identified and 269 others bearing the defendant's signature to a handwriting expert. He received a report that all of the prescriptions had been written by the defendant. He then obtained a search warrant for the defendant's office and seized the defendant's medical records. The defendant claims that because failure to comply and to cooperate with the department of consumer protection might lead to loss of his license, he should have been advised of his right to remain silent and of his rights of due process. Because he was not so advised, he claims that his statements and his medical records were obtained illegally and should have been suppressed.

The defendant concedes that he was not technically in custody when he spoke to Moore in his own office, but he contends that he should have received *Miranda*[1]

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 83 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

warnings nevertheless. Two conditions must exist before *Miranda* warnings are required: the defendant must be in the custody of law enforcement officials, and the defendant must be subjected to interrogation. *State v. Green,* 207 Conn. 1, 6, 540 A.2d 659 (1988); *State v. Arroyo,* 13 Conn. App. 687, 698, 539 A.2d 581 (1988). The defendant was not in custody, and the *Miranda* warnings were not required.

The defendant also claims both that there was "a certain amount of inherent coercion built into the April 17 meeting" because he had previously been approached about giving up his license to prescribe controlled substances, and that Moore used deception, intimidation and coercion against him in violation of his federal constitutional rights under the fifth and fourteenth amendments. He has offered no support for his claim that he was intimidated or coerced into identifying his signature or that any statement he made was involuntary, and we find none in the record. The trial court did not err in denying the defendant's motions to suppress.

## II

At the trial of the case, the jury reasonably could have found the following facts. The defendant came under investigation by agents of the drug control division of the consumer protection department in April, 1985. One of the agents of the drug control division, Richard Moore, had received information from pharmacists in the New Haven area about possible improprieties. He visited twenty-five pharmacies in the New Haven area and seized over 1000 prescriptions for Schedule II[2] substances that had been written by the defendant between December 1, 1984, and April 1, 1985. Moore made an appointment to meet the defendant on April 17, 1985, in order to investigate the possibilities of forgery, "doc-

---

[2] General Statutes § 21a-242 (b) lists controlled substances included in Schedule II.

tor shopping" or over-prescribing. Moore showed the defendant fifty-eight prescriptions that had been written on the defendant's forms, and the defendant identified fifty-six of the fifty-eight as being his. Moore had not told the defendant that he was suspected of anything. Moore then picked out 269 of the seized prescriptions for Schedule II drugs that had been written on the defendant's forms and took them to a handwriting expert, together with the fifty-six forms identified by the defendant. The prescriptions related to ten patients. The handwriting expert found that all of the prescriptions had been signed by the same person. The medical records of nine of the ten patients were seized from the defendant's office under the authority of a warrant; the records of the tenth patient, however, had been destroyed. James O'Brien, a physician who also has a PhD in pharmacology, was offered as an expert witness without objection. He testified that in his opinion the prescriptions were not written in good faith or in accord with standard medical practice. The defendant testified that he had prescribed medications to each of the patients in good faith and for demonstrable physical conditions.

General Statutes § 21a-277 (a) makes it an offense to prescribe a controlled substance, which is a narcotic substance, "except as authorized in this chapter." General Statutes § 21a-277 (b) makes it an offense to prescribe a controlled substance, except a narcotic substance, "except as authorized in this chapter." The authorization referred to is found in General Statutes § 21a-252 (a) and (b).[3] This section provides that under

---

[3] General Statutes § 21a-252 provides: "PRESCRIPTION AND DISPENSING OF CONTROLLED SUBSTANCES BY CERTAIN PRACTITIONERS. SURRENDER OF UNUSED SUBSTANCES BY PATIENTS. (a) A physician, in good faith and in the course of his professional practice only, may prescribe, administer and dispense controlled substances or he may cause the same to be administered to by a physician assistant, nurse or intern under his direction and

proper circumstances a physician or an osteopath may, in good faith and in the course of his professional practice only, prescribe controlled substances. The state was permitted to ask O'Brien, as to each of the ten patients identified on the prescriptions, on the basis of summary sheets detailing the prescriptions and medical records seized from the defendant's office, for his opinion as to whether the defendant had acted in good faith or in accord with standard medical practice. O'Brien testified that the defendant had not acted in good faith or in accord with standard medical practice and that no medical condition could justify the types of prescriptions written. The defendant objected to the state's line of questioning and claimed that there was no foundation for O'Brien's opinion and excepted to the overruling of his objection.

The defendant claims on appeal that the trial court erred in permitting O'Brien to give an opinion as to whether the prescriptions were written in good faith, which is an ultimate issue of fact.

The defendant has failed to comply with Practice Book § 4065 (d) (3), which failure would ordinarily preclude review of his claim. He does not rely on the objection interposed in the trial court, however. He claims that good faith is a question of intent, and that in a criminal case an expert is not allowed to give an opinion as to whether the accused had the mental state to commit the crime charged because that is the ultimate

supervision, for demonstrable physical or mental disorders but not for drug dependence except in accordance with state and federal laws and regulations adopted thereunder.

"(b) An osteopath, in good faith and in the course of his professional practice only, may prescribe, administer or dispense controlled substances or he may cause the same to be administered by a nurse under his direction and supervision, for relief of pain to the extent permitted by the Federal Controlled Substances Act and state laws and regulations relating to osteopathy."

issue in the case. He bases his claim upon General Statutes § 54-86i[4] and upon his constitutional right to a fair trial. Conceding that he did not base his objection on § 54-86i, he claims that he is entitled to review under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

A similar claim was considered and rejected in *State* v. *Vilalastra,* 207 Conn. 35, 46–47, 540 A.2d 42 (1988). The admissibility of O'Brien's opinion was an evidentiary matter and did not implicate fundamental fairness or violate any specific constitutional right. An expert witness may be allowed to give an opinion on an ultimate issue where the trier needs expert assistance in order to make intelligent findings. Id., 41. The defendant is not entitled to *Evans* review of this claim.

The defendant also contends that this claim was properly preserved for appeal because, after the state had rested, he filed a motion for mistrial in which he asserted that the good faith of the defendant was a question for the jury and that permitting O'Brien to state an opinion as to the good faith of the defendant was prejudicial to the defendant and denied him a fair trial. The objection to O'Brien's testimony was not interposed on the ground now raised on appeal, and § 54-86i was never raised in the trial court.

Since this claim is not of constitutional dimension, and since it was not distinctly raised in the trial court; see Practice Book § 4185; we decline to review it.

---

[4] General Statutes § 54-86i provides: "TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did not or did have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

## III

The defendant claims that the trial court erred in its charge in that (1) it shifted the burden of proof on an essential element of the crimes charged to the defendant, (2) its charge defining good faith was inadequate, and (3) it failed to refer to the evidence.

### A

The defendant was charged with violations of General Statutes §§ 21a-277 (a) and 21a-277 (b), each of which proscribes prescription of certain kinds of controlled substances "except as authorized in this chapter." General Statutes § 21a-252 (a) provides authorization to a physician to prescribe, in good faith and in the course of his professional practice only, controlled substances, for demonstrable physical or mental disorders but not for drug dependence except in accordance with state and federal laws and regulations adopted thereunder. General Statutes § 21a-252 (b) provides authorization to an osteopath to prescribe, in good faith and in the course of his professional practice only, controlled substances, for relief of pain to the extent permitted by the Federal Controlled Substance Act and state laws and regulations relating to osteopathy. General Statutes § 21a-269 provides as follows: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, provision or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

Section 21a-269 means that it was not necessary to prove, as an essential element of the offenses charged, that the defendant was not authorized to prescribe, until the defendant had offered substantial evidence of the

applicability of the statutory exception to him. Once he has done so, the burden devolves upon the state to prove the nonapplicability of the exception, as it does with respect to all other essential elements in the case, beyond a reasonable doubt. *State* v. *Liebowitz,* 7 Conn. App. 403, 410, 509 A.2d 43 (1986).

The state concedes that the defendant offered substantial evidence of his good faith, and that the burden of proving absence of good faith rested upon the state.

The defendant argues that even though the court instructed the jury that the state must prove "each and every element of the crimes beyond a reasonable doubt," it did not charge that the state must prove that the defendant did not meet one of the criteria of § 21a-252 so that the jury might have inferred that the burden was upon the defendant to prove that he met all four of the criteria of § 21a-252.

The defendant concedes that he did not raise his claim that the charge shifted the burden of proof by way of an exception. He claims, and we agree, that the claim is reviewable under *State* v. *Evans,* supra, 70.

A review of the charge demonstrates that the court properly and carefully instructed the jury that the state was obliged to prove, beyond a reasonable doubt, that the defendant was not authorized, either as a physician or as an osteopath, to prescribe as he did. The elements of § 21a-252 all were explained and the court charged, not once but several times, that the state was required to prove all the elements of the crime charged beyond a reasonable doubt, including the element that the defendant was not authorized under § 21a-252 to prescribe as he did. There is no merit to this claim.

B

The defendant claims that the court erred in defining good faith as "that state of mind denoting honesty

of purpose, freedom of intent to defraud and gener-
ally speaking being faithful to one's duties or obliga-
tions," because this definition employs a civil rather
than a criminal standard.

The court's definition of good faith occurred during
its explanation of the statutory exceptions under which
physicians or osteopaths are permitted to prescribe con-
trolled substances when done in good faith and in the
course of professional practice. The court explained that
good faith is a subjective concept, proceeding from the
individual's mind, and that the jurors were required to
determine the defendant's intent or state of mind at
the time he wrote the prescriptions. It included the defi-
nition quoted above. The defendant had requested the
following charge: "Now good faith has been construed
to mean without unlawful intention or with an honest
belief that the person to whom the narcotics are sold
or administered is actually suffering from a physical
or mental condition which would suggest that narcotics
might be used in accordance with good medical prac-
tice. Good faith in the course of his professional prac-
tice means subjective good faith looking to the state
of mind and intentions of the accused."

The court instructed the jurors that they could con-
sider the defendant's testimony and any evidence of
the circumstances when he prescribed controlled sub-
stances. They were charged that malpractice or negli-
gence does not constitute a crime and that it must be
shown that it was not the defendant's purpose to treat
a legitimate medical objective. They were instructed
that if a physician has an honest purpose, free from
any intent to defraud, is faithful to his duties and obli-
gations and is in good faith, mere error of judgment
does not constitute a lack of good faith.

The court is not obliged to charge in the exact lan-
guage requested as long as the point is fairly covered.

*State* v. *Sergi,* 7 Conn. App. 445, 450, 509 A.2d 56, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986). The trial court gave an accepted definition of good faith and substantially covered the defendant's request.

## C

The defendant claims also that the court in its charge failed to refer to the facts.

The degree to which reference to the evidence may be called for in the jury charge lies largely in the discretion of the court. *State* v. *Hardwick,* 1 Conn. App. 609, 620, 475 A.2d 315, cert. denied, 193 Conn. 804, 476 A.2d 145 (1984). The court went over each of the counts and referred to the testimony of witnesses and to the many exhibits. The trial was not complicated and the main issue was as to whether the defendant was authorized under § 21a-252 to write the prescriptions that formed the basis for the charges. The charge as a whole was correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982).

## IV

The defendant's final claim is that the court erred in denying his motion for acquittal because the state had failed to provide any evidence of bad faith on the part of the defendant.

When the defendant challenges the sufficiency of the evidence, we must review the evidence in the light most favorable to sustaining the verdict and determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Tracy,* 14 Conn. App. 451, 453, 541 A.2d 132 (1988).

There was evidence from which the jury reasonably could have found that the defendant prescribed very large amounts of drugs and other controlled substances to several patients over the course of a four month period. The jury might have found from the evidence that the frequency of the prescriptions was too high and that no medical condition would justify them. The evidence was sufficient, if believed by the jury, to support a conclusion that the defendant was guilty as charged.

There is no error.

In this opinion the other judges concurred.