## STATE OF CONNECTICUT *v.* RICHARD QUINT
## (6663)

DUPONT, C. J., DALY and STOUGHTON, Js.

Argued May 11—decision released June 27, 1989

*Thomas E. Minogue, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Knight,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant appeals from the judgment of conviction rendered after a jury returned a verdict finding him guilty of four counts in a six count information. We find no error.

The first two counts of the information charged the defendant with sexual assault in the first degree, a violation of General Statutes § 53a-70 (a). The third, fourth and fifth counts charged the defendant with intentionally aiding another person to commit sexual assault in the first degree, a violation of General Statutes §§ 53a-8 and 53a-70 (a). The sixth count charged the defendant with unlawful restraint in the first degree, a violation of General Statutes § 53a-95 (a). The jury returned a verdict of guilty on counts three, four, five and six. The jurors reported that they were unable to agree on counts one and two, and the court declared a mistrial as to those counts.

The defendant claims that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty as an accessory to three distinct sexual assaults. He also claims that the trial court erred in refusing to grant his motion for a mistrial after a prosecution witness referred to "mug shot files" during his testimony.

After the jury had returned its verdict, the defendant filed a motion for judgment of acquittal pursuant to Practice Book § 899. The court denied the motion. Section 899 provides for a judgment of acquittal following a guilty verdict as to any offense for which the evidence does not reasonably permit a finding of guilty beyond a reasonable doubt.

The jury reasonably could have found the following facts. The victim of the assaults, a seventeen year old girl, had been rollerskating with friends on a Saturday night. At about midnight, she was driven to the apartment of a girlfriend where she remained for about one hour. As she and her girlfriend left to go to a store from

which she could telephone to her home for a ride, a car stopped. There were two males in the car, one of whom was the defendant. The victim, her girlfriend, and the two males went to the apartment. The victim talked to her girlfriend about whether it was all right to go with the two males and then left with them for her home in another town. She gave them directions, but agreed when they suggested that they stop to buy some rum and again when they suggested going to a beach cottage. When they arrived at the cottage, the lights were not working. The males built a fire in the living room and the defendant, his companion and the victim drank some rum and beer and talked. The victim tried to use the telephone but was unable to get a dial tone. After some time, the defendant asked the victim to go to another room with him. There was a bed in the room, and the defendant pushed the victim down on the bed and took off her clothing. Later on, three other males walked into the room. The defendant tied the victim's hands above her head while the three others held her legs down. Each of the three other males, none of whom she could identify, had sexual intercourse with the victim.

At some point, the victim attempted to get loose, breaking a window in the process and suffering scratches on her shoulders. The three other males then left the room, and the defendant told the victim to get dressed. The male who had been with the defendant originally was not one of those who assaulted the victim, and he was outside with the three others when she left the house. The defendant and his original companion drove the victim to a bridge and let her out.

The police were called and the victim took them to the cottage where they found a fire in the fireplace, beer cans on the floor and a broken bedroom window. The victim picked out a picture of the defendant from an array of nine pictures and she identified him in court.

Her girlfriend picked out a picture of the defendant from an array of pictures and identified him as the person who had been at her apartment earlier and who had left with the victim. She also identified the defendant in court. There was medical evidence to corroborate the victim's account.

When the sufficiency of the evidence is challenged, we review the evidence in the light most favorable to sustaining the verdict and determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Levine,* 17 Conn. App. 257, 267, 551 A.2d 1271, cert. denied, 210 Conn. 809, 556 A.2d 608 (1989).

The defendant correctly points out that there is no such crime as being an accessory; *State* v. *Edwards,* 201 Conn. 125, 130, 513 A.2d 669 (1986); and that the state was required to prove the substantive offense in order to establish accessorial liability. He claims that the state failed to sustain its burden of proving beyond a reasonable doubt that each of three underlying sexual assaults occurred, particularly in light of the fact that the jury could not agree on the two counts charging the defendant himself with having committed sexual assault in the first degree.

It is true that the victim testified that the defendant had twice committed a sexual assault upon her, but we cannot know why the jury failed to convict on those counts and it is useless to speculate upon its reasons. Consistency in the verdicts is not necessary, and the defendant has received the benefit from the mistrial arising out of the failure of the jury to agree on those two counts. *State* v. *Cassidy,* 3 Conn. App. 374, 389–90, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). There was sufficient evidence for the jury

reasonably and logically to conclude as it did that the defendant was guilty of the three counts of intentionally aiding another person to commit sexual assault in the first degree and of one count of unlawful restraint in the first degree.

The remaining claim of the defendant arises out of a prosecution witness' use of the term "mug shot" during his direct examination. A brief description of the circumstances during which this occurred is necessary in order to place the claim in perspective. After the victim testified that she had looked at a number of pictures and had identified one as a picture of the defendant, the state offered the array of nine pictures as an exhibit. The defendant objected, primarily because the pictures showed a portion of a strap used to hold a sign identifying the defendant, claiming that it indicated that he had a prior record. The trial judge determined that there was nothing shown on any picture that was prejudicial to the defendant and overruled the objection. No error is claimed in this ruling.

Thereafter, the state called Ronald Blauvelt, a detective on the Stratford police force. Blauvelt testified that he put together a photo array that included a picture of the defendant. The assistant state's attorney then asked Blauvelt if he had any names associated with the cottage. Blauvelt gave the following answer: "Yes, I—the name Quint came up. That's how I—in that, that particular name I used in my investigation in looking into our mug shot files to see if—"

The defendant immediately objected and, outside the presence of the jury, moved for a mistrial. He claimed that the use of the term "mug shot" had conveyed to the jury the fact that he had a prior record and denied him a fair trial. The trial judge admonished Blauvelt but denied the motion. The defendant excepted to the ruling and claimed that no curative instruction could

erase the prejudicial impact of the reference to "mug shot files." After the jury returned, the court instructed the jurors to disregard the remark and to strike it from their minds.

The defendant claims that the evidence of his accessorial liability was not strong and that the use of the term "mug shot" by Blauvelt prejudiced his right to a fair trial by infecting the factfinding process with the extraneous element of some prior bad act. He claims that the instruction tended to emphasize rather than cure any prejudice because it directed attention to the remark. He also asserts that because of the remark by Blauvelt, he was obliged to testify in order to explain his prior arrest.

Basic to the defendant's claim is the premise that the evidence against him was not strong. We disagree with his assessment of the evidence. Credibility is for the trier of fact, and here the testimony of the victim was certain and decidedly sufficient to convict if believed by the jury. In addition, her testimony was corroborated by her identification of the cottage and by what the police observed therein. Her identification of the defendant as one of the persons with whom she had left for home was corroborated by testimony of her girlfriend.

Although the defendant objected to the offer of the whole array of photographs, he does not claim error in the ruling that admitted them as an exhibit. In his brief, he states that the court overruled his objection after a determination that there was nothing shown in any picture in the array that prejudiced the defendant. He also comments on the effort made by the trial court to mask from the jury's view any indication that the persons shown in the photographs had prior criminal arrest records. His only claim of error

is that the use of the words "mug shot files" was so prejudicial as to require a mistrial.

The trial court enjoys wide discretion in deciding whether a mistrial is warranted, and its decision will be reversed on appeal only if it is established that this discretion has been abused. *State* v. *Hancich,* 200 Conn. 615, 625, 513 A.2d 638 (1986); *State* v. *Briggs,* 17 Conn. App. 648, 654–55, 554 A.2d 1112 (1989). The reference to "mug shot files" occurred spontaneously, and there was nothing in the question by the assistant state's attorney that would have suggested the response. Of course it would have been better had it not been said, but the trial court instructed the jury to disregard the statement and added that there are many reasons why police departments might have pictures of various individuals. The "mug shot files" reference was inadvertent and incidental to the purpose of Blauvelt's testimony and it was not repeated. See *United States* v. *Monks,* 774 F.2d 945, 955 (9th Cir. 1985) (no abuse of discretion in denying mistrial after inadvertent references to photo lineup pictures as mug shots).

The prompt action taken by the trial court to instruct the jury to disregard the statement by Blauvelt was a proper response to the defendant's motion for mistrial. The claim that this action by the trial court could not protect the defendant because it drew attention to the remark adds nothing. See *State* v. *Gary,* 211 Conn. 101, 112, 558 A.2d 654 (1989).

The defendant himself took the witness stand and put his prior record before the jury. We reject his claim that he was obliged to do so in order to explain a prior arrest by the mention of "mug shot files." We assume that the jury followed the court's admonition to disregard the remark. It is by no means certain that the remark informed the jury that the defendant had committed some prior bad act, since the court told the jury

that there are many reasons why police departments might have pictures of various persons. More important to our determination to reject this claim of the defendant is that he testified to an alibi, which was more likely to have been the real reason for his having taken the witness stand. Under those circumstances, it is common practice for a defendant to inform the jury of his prior record in order to forestall an attempt by the state to use his record to attack his credibility.

We cannot find that the trial court abused its discretion in denying the motion for mistrial.

There is no error.

In this opinion the other judges concurred.