[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION IN ARREST OF JUDGMENT AND AMENDED MOTION FOR NEW TRIAL
The defendant, Dudley Hall, M.D., moves to arrest judgment in the above captioned case on the grounds that: (1) the information does not adequately charge an offense; (2) C.G.S. § 21a-252 (a) does not adequately define the circumstances under which a physician may prescribe narcotic and controlled substances and is constitutionally void for vagueness, both on its face and as applied to the facts of the case; (3) C.G.S. §§ 21a-252 (a), 21a-277 (b) and 21a-278 (b) have been improperly combined to create a hybrid crime not intended by the legislature; and (4) C.G.S. § 21a-278 (b) is unconstitutionally vague as applied to the facts of this case and is overbroad in its punishment provision. The Court conducted a hearing on this motion on May 10, 2002 (prior to sentencing) and has received from the parties' memoranda of law in support of their respective positions.
The defendant was arrested pursuant to an arrest warrant, charging him with 22 counts of illegally prescribing a narcotic substance and 14 counts of illegally prescribing a controlled substance in violation of C.G.S. §§ 21a-278 (b) and 21a-277 (b). The arrest arose from an undercover operation led by the Health and Social Services Fraud Bureau within the Office of the Chief State's Attorney. The investigation began sometime in May of 2000 and included agents from the State Department of Consumer Protection, Drug Control Division, and US Drug Enforcement Administration. Working in conjunction with these agencies, the lead investigator ultimately secured the aid of Dr. Hall's receptionist and initiated a series of "undercover patient" visits. It was at these visits where information was gathered concerning the prescription practice, or lack thereof, of Dr. Hall. Over a four-week time span and after sixteen (16) separate visits by four (4) different undercover officers, thirty-six (36) prescriptions for a variety of narcotic and controlled substances were issued by the defendant to the officers. The case was tried to a jury and guilty verdicts were returned on each of the CT Page 11686 thirty-six (36) counts charged.
Practice Book section 42-56 provides that "On motion of the defendant, the judicial authority shall arrest judgment if the . . . information does not charge an offense or if the judicial authority was without jurisdiction of the offense charged . ."
First, the defendant argues that the amended information did not properly charge an offense. The defendant relies on the phrase "illegally prescribed . . . in a manner not authorized by 21a-252 (a) . . . in violation of § 21a-278 (b)" (or 21a-277 (b)) and contends that the State attempted to create a hybrid crime by including both statutes in the amended information. The State argues that in order to meet its burden in establishing a violation of §§ 21a-278 (b)[1] and 21a-277
(b)[2] it was necessary to charge and prove the elements of § 21a-252
(a).
C.G.S. § 21a-252 (a) provides, in pertinent part: "A physician, in good faith and in the course of the physician's professional practice only, may prescribe, administer and dispense controlled substances . . . for demonstrable physical or mental disorders . . ." This section sets the parameters for a physician prescribing narcotic and/or controlled substances. Sections 21a-278 (b) and 21a-277 (b) are "penalty statutes", that is to say, they are statutory provisions which set forth the penalty to be imposed for a violation of the particular section. A simple reading of these sections reveals that they do not exclude or include any particular professional group or individuals. As such, it is arguably necessary, when the defendant is a doctor whose charge is based upon the "prescribing" element, to establish the "boundaries" within which a physician must act, as set forth in Section 21a-252 (a). See State v.Levine, 17 Conn. App. 257 (1989); State v. Fritz, 204 Conn. 156 (1987);State v. Liebowitz, 7 Conn. App. 403 (1986).
Indeed, the defendant concedes that the language of §§ 21a-278 (b) and 21a-277 (b) "has previously been judicially determined to invoke the provisions of § 21a-252." (Defendant's Memorandum In Support of Motion In Arrest of Judgment, dated April 26, 2002, pp. 1-2)
The defendant here complains that those cases do not incorporate the phrase "for demonstrable physical or mental disorder." The defendant claims that the authorizing language of Section 252(a) should have come into play only after the defendant had introduced substantial evidence that he was acting in good faith and in the course of his medical practice, at which point the burden should have shifted to the State to prove beyond a reasonable doubt that the defendant's actions were not in CT Page 11687 good faith nor in the course of his medical practice.
The defendant alleges no prejudice as a result of the State's action, nor could he. At trial, the defendant testified extensively that he was acting in good faith and in the course of his medical practice. The State's charges and proof to the contrary clearly were admissible. The fact that the State charged as it did and presented its evidence in the order it did, is of no import.
The defendant focuses his argument on the "dispensing and administering" provisions of the statute. While the defendant's arguments were well briefed and argued, they ignore the "prescribing" element that was the focus of the State's case. The defendant argues that "without the enabling language of § 21-252a, every health care professional who issues a prescription has violated § 21a-278 (b) or § 21a-277
(b)."[3] C.G.S. § 21a-252 (a) clearly sets forth the conditions under which a physician may prescribe, administer and dispense. As such, it is only those health care professionals who do not prescribe "in good faith", for a "demonstrable physical or mental disorder" and "in the course of their professional practice," who are in violation of the statute. Again, it is the prescription practices or lack thereof, which is the conduct under legal scrutiny. In order to meet it's burden of proof, the State had to establish that the "conditions" set forth in21a-252a were not satisfied.
Accordingly, as to the claims that the information did not adequately charge an offense, and that the statutes were improperly combined, the motion in arrest of judgment is denied.
Next, the defendant argues that Section 21a-252 (a) is constitutionally void for vagueness both on its face and as applied to the facts of this case.
Section 21a-252 (2) provides, in part: "A physician, in good faith and in the course of the physician's professional practice only, may prescribe, administer and dispense controlled substances . . . for demonstrable physical or mental disorders . . ."
Trial counsel filed an Amended Motion to Dismiss on February 19, 2002, arguing that "21a-252 is unconstitutionally vague as it applies to sections 21a-277 (b) and 21a-278 (b)." Oral arguments were held before this Court on February 22, 2002 and the motion was denied. The defendant has retained new counsel and this issue is renewed here.
The law is clear that "the party attacking a validly enacted statute CT Page 11688 . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and [the courts] indulge in every presumption in favor of the statute's constitutionality." (Citation omitted.) State v. JasonB., 248 Conn. 543, 556, 729 A.2d 760 (1999).
"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." State v. Smith, id., quoting Hill v. Colorado, 530 U.S. 120
S.Ct. 2480, 2498 (2000). "Thus, in order to surmount a vagueness challenge, a statute must afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." Statev. Payne, 240 Conn. 766, 777 (1997).
This Court relies on State v. Pickering, 180 Conn. 54, 428 A.2d 322
(1980), for its void for vagueness standard of review. The Pickering
court held as follows:
 A long line of United States Supreme Court decisions has established a basic principle to be considered when a statute is under attack as void for vagueness. It may be described as a fair warning principle which mandates that as a matter of due process a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid . . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law . . . This notion of fair warning is intended to ensure that vague laws do not become a trap for the innocent . . . It has been recently stated that all the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden. Thus, a penal statute may survive a vagueness attack solely upon consideration of whether it provides fair warning.
(Citations omitted; internal quotation marks omitted.) Id. at 59-61.
Based on the above standard of review, the issue becomes whether a person of ordinary intelligence would understand that the defendant's acts were prohibited under §§ 21a-252a, 21a-278 (b) and/or 21a-277 (b). The CT Page 11689 statutes are clear and unambiguous.
Section 21a-252a clearly sets forth the prescription practice to which a physician should adhere. "[I]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness, for in most English words and phrases there lurk uncertainties." State v. Jason B.,248 Conn. 543, 567 (1999) quoting State v. Payne, 240 Conn. 766, 778
(1997).
"[A]s a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." State v. Payne, Id.,240 Conn. 777 citing State v. Pickering, supra, 180 Conn. 54. The defendant argues the conjunctive language "and" requires that a physician charged under these statutes must have prescribed, administered and dispensed the narcotic or controlled substance. Presumably the defendant raises this issue because the facts of this case demonstrated that the undercover officers never filled the prescriptions issued by the defendant. However, closer scrutiny of the language reveals that the use of the conjunctive "and" is merely to enumerate those acts in which a physician may engage in the course of the physician's medical practice. There is nothing mandatory in the language to suggest that a physician necessarily must combine all three acts in each instance of prescription practice.
Therefore, as applied to the particular facts of this case, the statute clearly sets forth the standards a physician must adhere to in prescribing narcotic and/or controlled substances. Balanced by "whether the language conveys sufficiently definite warning as to the proscribed [or required] conduct when measured by common understanding and practices,"[4] this Court finds § 21a-252 (a) "sufficiently definite" to enable a person of common intelligence to know what conduct is prohibited. The defendant has made no plausible argument that he acted in reliance that his conduct (prescription practice) was lawful, or that a person of ordinary intelligence would not have reason to know that he was engaging in prohibited conduct.
Accordingly, this Court is unpersuaded that the defendant has met his heavy burden of proving that C.G.S. § 21a-252 (a), as applied to the circumstances of this case, is unconstitutionally void for vagueness.
Finally, the defendant claims that § 21a-278 (b) is overbroad "to the extent that it seeks to punish one who merely "prescribes" a narcotic substance." He does not make a constitutional claim (i.e. violation of due process or right not to be subjected to cruel and unusual CT Page 11690 punishment), rather, raises the issue "to illustrate that the legislature could not have intended to punish the mere act of issuing a script with a mandatory minimum five (5) year sentence."[5]
"The classification of crimes is for the legislature. In examining the rationality of a legislative classification, we are bound to defer to the judgment of the legislature unless the classification is clearly irrational and unreasonable." State v. Dupree, 196 Conn. 655, 665 (1985)citing State v. Rao, 171 Conn. 600, 603 (1976); State v. Simmat,184 Conn. 222, 224-25 (1981). Legislative prerogative, however, is not open-ended. The United States Supreme Court has held that while reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishment for crimes, a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Solem v. Helm, 463 U.S. 277,288-90, 203 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
The mandatory minimum applies to a non-drug dependent person convicted under the statute. The legislature has provided drug-dependent persons with an exception to the mandatory minimum and places the burden on the defendant to demonstrate dependency. Therefore, it cannot simply be said that the legislature "acted irrationally in opting to punish more severely what it could reasonably perceive to be the greater danger to the community." State v. Dupree, supra, at 665. The health and welfare of society is the primary concern of legislatures in enacting law and corresponding punishment provisions. A physician in violation of this statute is perhaps the epitome of the "greater danger" with which the legislature was concerned. "[T]he constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and impose punishment within the limits and according to the methods therein provided. In other words, the judiciary's power to impose a particular sentence is defined by the legislature, and there is no constitutional requirement that courts be given discretion in imposing a sentence. In addition, the legislature may impose mandatory minimum terms of imprisonment for certain crimes and may preclude the probation or suspension of a sentence." (Citations omitted.) State v. Darden,171 Conn. 677, 679-80 (1976) citing People v. Broadie, 45 App. Div. 2d 649,360 N.Y.S.2d 906; Gallego v. United States, 276 F.2d 914 (9th Cir., 1960).
"The challenged statute is a valid exercise of the legislature's police power, which clearly encompasses the preservation of order and the prevention of crimes and misdemeanors. To be constitutionally valid, a regulation made under the police power must have a reasonable relation to CT Page 11691 the public health, safety, morality and welfare." State v. Darden, Id.
at 680 quoting State v. Gordon, 143 Conn. 698, 703 (1956) Section 21a-278
(b) is constitutionally sound under this standard. There is a definite relationship between the protection of public safety and a mandatory minimum sentencing scheme for those convicted of crimes perpetuating the abuse of drugs.
Based on the foregoing, the defendant's Motion In Arrest of Judgment and Amended Motion For New Trial are denied.
HARTMERE, J.